IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

v.                01cv00072 BDB-ACE

STATE OF NEW MEXICO, *ex rel*     ZUNI RIVER ADJUDICATION
 State Engineer, A& R Productions, *et al.,*

    Defendants,        Petranto's Motion to Revoke
               Appointment of Special Master

**Memorandum Opinion and Order**

  THIS MATTER is a part of the general adjudication of all water rights in the Zuni

River stream system.  It is before the Court on Defendant Paul Petranto's March 16, 2001

Motion and Memorandum to Revoke Reference to Special Master and to Stay Further

Proceedings Before Special Master (Docket Nos. 24-25).  Having reviewed and considered

the Defendant's motion, briefs and the pertinent law as well as the argument and evidence

presented at the April 30, 2001 hearing, the Court, based on the findings set forth below,

concludes that the Defendant's motion is not well taken and should be DENIED.

  **Background:** On January 19, 2001, the United States filed the Complaint (Doc. 1)

which initiated this adjudication.  Soon thereafter, the Complaint was served on

approximately 1900 defendants.  Community agitation and strife quickly arose which

required immediate action.  Based on the scope of the remedy sought in the Complaint, the

Court determined that a special master was necessary to shepherd the case and to conduct

fact finding.  Given her previous and current service to this District, the Court selected Ms.

Vickie L. Gabin as an excellent and experienced candidate.  It sent letters to counsel for the Office of New Mexico State Engineer[1] and to the only counsel of record at the time, the United States of America announcing the decision to appoint a special master and inquiring whether counsel had any comments regarding Ms. Gabin.  Thereafter on March 1, 2001, an Order (Doc. 3) was entered which stayed further action in the case until planning and scheduling meetings could take place.

State and federal attorneys who had previously worked with Ms. Gabin in water adjudications gave her appointment full support.  The March 12, 2001 Order of Reference (Doc. 14) was therefore entered.  It states at pages 2-4 that:

> ...The Special Master is hereby directed, pursuant to Fed.R.Civ.Proc. 53(c) and to N.M. Stat. Ann. §72-4-18 1978 (1997 Repl. Pamph.) [*sic*][2], to hear and to determine all claims and contentions of the parties relating to their rights to the surface and underground waters of the stream systems encompassed by this case and all other related matters that may arise in connection with such rights.   This direction shall include hearing and determining all motions, except as follows.  The Special Master shall not hear or determine any motion that presents only legal issues and no contested factual matters, unless requested to do so by the State of New Mexico ("State") and the United States of America ("United States") or unless so directed by the Court.
>
> *****
>
> In all other respects, the Special Master shall have the powers as are specified under Fed.R.Civ.Proc. 53 and all proceedings before the Special Master shall be in accordance therewith.

---

[1] The State had not yet entered an appearance.  However, as with all other water rights cases in this District, the Court anticipated that it would be joining the case and that along with the United States, it would fund the Special Master's expenses and costs. *See* Order of Reference.  On April 4, 2001 the State Engineer entered his appearance. (Doc. 35).

[2] The Order of Reference is corrected to read "§72-4-19 1978 (1997 Repl. Pamph.)."

On March 16, 2001, Mr. William Stripp entered his appearance for the Defendant Paul Petranto and timely filed a motion and memorandum brief requesting that the appointment be revoked.  No other party participated in briefing of the issue.  On April 30, 2001, Mr. Stripp appeared before the Court and argued his client's motion.  The Court granted him leave to file a supplemental brief in ten days, which he did on May 15, 2001 (Doc. 57).

**Legal Standards:**

The Court will reference and rely upon the following legal standards.

A reference to a master shall be the exception and not the rule.  In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury,... a reference shall be made only upon a showing that some exceptional condition requires it.

Fed.R.Civ.Proc. 53(b).

The master shall prepare a report upon the matters submitted to the master by the order of reference and, if require to make findings of fact and conclusions of law, the master shall set them forth in the report.

Fed.R.Civ.Proc. 53(e)(1).

In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report, any party may serve written objections thereto upon the other parties.  Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d).  The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.

Fed.R.Civ.Proc. 53(e)(2).

A court reviews a special master's recommended conclusions of law under the *de novo* standard. Gottlieb v. Barry, 43 F.3d 474, 486 (10th Cir. 1994); NRLB v. Monfort Inc., 29 F.3d 525, 528 (10th Cir. 1994).


**Discussion:**

Exceptional Conditions:  Defendant Petranto makes three points in opposing this appointment. First, he asserts that the appointment of a special master is generally disfavored and should be made only in rare cases. La Buy v. Howes Leather Co., 352 U.S. 249 (1957) (Rule 53(b) allows only a narrow range of conditions under which a special master can be appointed).  He cites a number of appellate cases which follow the La Buy principle in situations where a reference was made by a district court *sua sponte* or over the objection of a party.  These cases hold that judicial efficiency, calendar congestion, complexity of a case, a judge's lack of expertise in an area, the prospect of a lengthy trial and public interest in a speedy resolution are not acceptable "exceptional conditions" under their circumstances. *Id*; Burlington Northern R.R. Co. v. Dep't of Revenue, 934 F.2d 1964, 1068-74 (9th Cir. 1991); McCormick v. Western Kentucky. Nav., Inc., 993 F.2d 568, 570 (6th Cir. 1993); Prudential Ins. Co. v. U. S. Gypsum Co., 991 F.2d 1080, 1080-1 (3rd Cir. 1993; Madrigal Audio Labs., Inc. v. Cello, Ltd., 799 F.2d 814, 818, fn. 1 (2nd Cir. 1986); and *In re United States*, 816 F.2d 1083, 1088 (6th Cir. 1987).  He also relies on the Eighth Circuit in Liptak v. United States which states "[b]eyond matters of account, difficult computation of damages, and unusual discovery, 'it is difficult to conceive of a reference of a nonjury

4

case that will meet the rigid standards of the <u>La Buy</u> decision'. " <u>Liptak</u>, 748 F.2d 1254, 1257 (8th Cir. 1984)(quoting 9 C. Wright & A. Miller, Federal Practice and Procedure, §2605 at 791 (1971)).  Mr. Petranto further points out that the <u>Order of Reference</u> did not specify any exceptional conditions or complicated issues and asserts that there are none present in this case.

Mr. Petranto is correct that, using the Supreme Court's narrow view of what constitutes exceptional circumstances in <u>La Buy</u>, many appellate courts have relied upon the case in revoking a special master's appointment.  In the post-<u>La Buy</u> world, district courts still regularly appoint special masters under appropriate circumstances. Fed.R.Civ. Proc. 53(b); <u>Thomas S. v. Flaherty</u>, 902 F.2d 250, (4th Cir. 1990) *reh., en banc, den.* 1990, *cert. denied* <u>Flaherty v. Thomas S.</u>, 498 U.S. 951 (1990) (case with a large plaintiff class, each member of which required individualized consideration); <u>Bd. of Ed. of Yonkers School Distr. v. CNA Ins. Co.</u>, 113 F.R.D. 654 (S.D.N.Y. 1987) (case with complex issues and a large volume of evidence); <u>Costello v. Wainwright</u>, 387 F. Supp. 324 (M.D.Fla. 1973) (case with technical questions beyond the Court's expertise); <u>Williams v. Lane,</u> 851 F.2d 867, 884 (7th Cir.1988) (case involving supervision of enforcement of order where judge's busy docket prevented him from doing so himself); <u>Gary W. v. Louisiana,</u> 601 F.2d 240, 244-45 (5th Cir.1979) (case involving multi-year implementation of court order affecting care of all mentally retarded children in Louisiana).  Since the exceptional conditions justifying the Special Master's appointment were not specifically deliniated in the <u>Order of Reference</u>, they are set forth below.

The requirements for making an appointment vary depending on whether the case is before a jury.  In a jury case, sufficient complexity is enough.  In a non-jury case, a showing of exceptional circumstances is required. Fed.R.Civ.Proc. 53(b).  Since it has not yet been determined whether a jury will hear this case, the Court has used the criteria for a non-jury matter. *See* Prudential, 991 F.2d at 1084.

A water rights adjudication presents any court with a variety of exceptional circumstances beginning with a huge defendant class whose members' claims require individualized review.   The complex issues addressed require specialized legal, hydrologic, agricultural and other technical knowledge generally acquired over several years, the totality of which are not usually possessed by a district judge.  The resources and effort required by an adjudication result in several years of extensive judicial supervision to sort out, schedule and make factual determinations across a gamut of issues for the multitude of defendants.

The Zuni River Basin adjudication involves identifying and determining the water rights of a Pueblo, a Tribe, federal agencies, state agencies, corporations, associations and thousands of natural persons.  The facts required and the law applied vary with the type of defendant and the history of the parcel of land.  Agricultural practices and hydrologic principles must be understood and correctly applied.  In this District's experience, water rights cases require tremendous coordinated attention, consistency and case management well beyond that which a judge with an extremely heavy case load could provide.[3]  Each

---

[3] The District of New Mexico presently ranks fourth nationally in weighted caseload per judge.

defendant is entitled to a hearing on the existence or the elements of his/her water right. Numerous questions regarding quantification, priorities and measure of water rights will arise. Once rights have been determined, each defendant is entitled to challenge any other's rights. Each hearing and trial may not be particularly lengthy, but there will be a multitude of them. Notice is a huge problem when determining several hundred water rights related to several hundred tracts of land which change in terms of size, ownership, type of use, place of use, and place of diversion. Creative strategies are necessary to keep the case moving along at an acceptable pace while meeting the requirements of due process. The exceptional conditions present in water rights adjudications generally and this adjudication in particular therefore lend themselves to the appointment of a special master.

A Blanket Reference: Defendant Petranto's second assertion is that the Order of Reference constitutes a "blanket reference" because it improperly confers the Court's powers upon the Special Master and thereby deprives him of a trial before an Article III Judge on the basic issues of law and fact. His argument is not persuasive.

An order of reference may confer on a special master sufficient power to meet the goals of the appointment (9A C. Wright & A. Miller, Federal Practice and Procedure, §2609 at 687 (1995)), but must not constitute an abdication of the district court's power. La Buy, 352 U.S. at 256; Stauble v. Warrob, Inc., 977 F.2d 690, 693-5. (1st Cir. 1992). Federal courts have long relied upon magistrate judges and special masters who do not possess Article

III status to aid in the performance of judicial duties. Crowell v. Benson, 285 U.S. 22, 51-2 (1932); In re Peterson, 253 U.S. 300, 312-314 (1920); and Stauble, 977 F.2d at 693-4, fn. 5. The use of such a judicial assistant to make preparatory findings of fact and recommended conclusions of law does not violate Article III when the supervising judge limits the master's responsibilities and performs a *de novo* review of the master's recommendations. *Id.* at 695,698 at fn. 13. If the judge conducts an independent review and discerns sufficient supporting evidence and application of the correct legal standards, that judge may rely on the master's report as a part of the determination. *Id.* at 695, 697. The Article III judge, however, makes the bottom-line determination of the ultimate issue. *Id.* at 695.

In this case, Special Master Gabin will handle case management and discovery, preside over evidentiary trials, and report preparatory findings of fact and recommended conclusions of law to the Court. As stated in the Order of Reference, she will not hear or determine any motion that presents only legal issues and no contested factual matters unless requested to do so by the parties or unless so directed by the Court. Her reference is limited to the powers allowed and limitations contained in Rule 53. Her factual determinations are subject to review by this Court under the clearly erroneous standard. Fed.R.Civ.Proc. 53(e)(2). Her legal recommendations are merely advisory to the Court and are reviewed *de novo.* Gottlieb, 43 F.3d at 486; Monfort, 29 F.3d at 529; Stauble, 977 F.2d at 697.

Once Master Gabin submits a report, the parties may file objections within a specified time. They may also request a hearing before this Court. Fed.R.Civ.Proc. 53(e)(2).

Following consideration of the report and objections, the Court "may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." *Id.* At the end of the day, it is the District Court which will enter the final decree. After careful consideration, a party may at any time request specific supervisory action from the Court. The Court will supervise the Special Master's operations, conduct regular, independent reviews and make the bottom-line determinations in this case.

Appointing a special master or judge *pro tempore* to a water adjudication is not unusual. In New Mexico, with an extremely rare exception[4], the federal[5] and state[6] courts

---

[4]

*See ,e.g.,* New Mexico *ex rel.* Office of the State Engineer v. Elephant Butte Irrigation District *et al.*, Doña Ana County Cause No. 96-888-CV.

[5]

*See* State of New Mexico *ex rel.* State Engineer v. Aamodt *et al.*, 66cv06639 (complaint filed 04-20-1966; special master appointed 05-02-1967; second master appointed 04-11-1988; third master appointed 05-09-1988; fourth master appointed 09-01-1989); State of New Mexico *ex rel.* State Engineer v. Abbott *et al.*, 68cv07488 & 70cv8650 consolidated (complaint filed 03-22-1968; special master appointed 05-16-1968, appointment reaffirmed 09-24-70 after consolidation, second master appointed 04-04-1985; third master [Gabin] appointed 04-21-1994); State of New Mexico *ex rel.* State Engineer v. Aragon *et al.*, 69cv07941 (complaint filed 07-01-1948, special master appointed 06-04-1964; case removed to Federal Court 03-04-1969; second and third co-masters appointed 04-03-1969; fourth master appointed 04-04-85; fifth master [Gabin] appointed 04-21-94); State of New Mexico *ex rel.* State Engineer v. Abeyta *et al.*, 69cv07896 & 69cv07939 (complaint filed 02-04-1969; special master appointed 05-19-1969; second master appointed 04-04-85; third master [Gabin] appointed 01-25-95); State of New Mexico *ex rel.* State Engineer v. Molycorp *et al.*, 72cv09780 (complaint filed 11-02-1972; special master appointed 05-30-1977; second master appointed 03-06-1985; third master [Gabin] appointed 01-25-1995;decree entered and case closed 12-01-2000); State of New Mexico *ex rel.* State Engineer v. Arellano *et al.*, 76cv00036 (complaint filed 01-22-1976; special master appointed 02-05-1976; second master appointed 04-04-1985, decree entered & case closed 05-17-1989); State of New Mexico *ex rel.* State Engineer and United States v. Abousleman *et al.*, 83cv01041 (complaint filed 06-27-1983; special master appointed 07-12-1984; second master [Gabin] appointed 06-15-1995; partial final decree for non-Pueblo rights entered 12-01-2000).

[6]

*See* New Mexico *ex rel.* Martinez v. Kerr-McGee Corp., 898 P.2d 1256 (N.M. App. 1995); New Mexico *ex rel.* Reynolds v. Niccum, 695 P.2d 480 (N.M. 1985); Mimbres Valley Irrigation Co. v. Salopeck v. NM Forest Service, 564 P.2d 615 (N.M. 1977); New Mexico *ex rel.* Reynolds v. Allman, 427 P.2d 886 (N.M. 1967); New Mexico *ex rel.* Erickson v. McLean, 427 P.2d 886 (N.M. 1966); New Mexico *ex rel.* Reynolds v. Mendenhall, 362 P.2d 998 (N.M. 1961); New Mexico *ex rel.* Reynolds v. Mitchell, 345 P.2d 744 (N.M. 1959); State of New Mexico *ex rel.* State Engineer v. Lewis, *et al*, Chavez County Cause Nos.20294 & 22600 (complaint filed 04-09-1954; State of New Mexico *ex rel.* State Engineer v. United States, San Juan County Cause No. 75-184; State of New Mexico *ex rel.* State Engineer v. Kerr-McGee Corp., Cibola County Cause Nos. CB-83-190-CV & CB-83-220-CV.

have routinely made such references.  Occasionally, a judge has resumed control of a case for a period of time, but inevitably, the case has been referred again to a master.  The practice also is common in other Western water adjudications.[7]

Defendant Petranto refers to Chief Justice Vanderbilt's observation (later repeated by the Supreme Court and the Sixth Circuit) that appointments of special masters are a leading cause of delay in litigation. La Buy, 352 U.S. at fn. 5.  Defendant Petranto's concerns not withstanding, it has been this District's observation and experience that significant delay and burdens on both the parties and the Court can occur when a case of this nature is overseen by a district judge with a full case load or a special master who is not experienced in water rights adjudications.  The goal of a water rights adjudication is to develop an accurate, administrable water rights decree. *See* Stat. Ann. 72-4-19 (1978). This goal is accomplished more promptly, efficiently, and accurately under the direction of a special master who can devote sufficient and timely resources and attention to the case. Hearings, status conferences and town meetings are held in the geographic area of the adjudication.  The master thus affords flexibility and availability to the parties which the Court cannot provide.  The practice of appointing a master has particular value in a water adjudication because the additional level of review allows the parties and the Court an opportunity to consider each decision's effect on the overall evolving scheme that will result in the final decree.

---

[7]

*See* In re Snake River Basin Adjudication, Cv. 39572 (Idaho) (assignment of special masters on sub-basin basis) and *In re* the General Adjudication of All Rights to Use Water in the Gila River System and Source, Cv. W1, W2, W3, W4, consolidated (assignment of special masters on river system basis).  The State of Colorado has met the challenges of water adjudications by creating a separate water court.

Lack of Qualifications and Potential Bias:  Defendant Petranto's third concern is that the *sua sponte* entry of the Order of Reference denies him an opportunity to object to the selection of this particular special master.  This concern is not well placed.

The Federal Rules do not place any specific limits on a district court's power to make an appointment of a special master; such lies within its discretion. Fed.R.Civ.Proc. 53; Harrington v. Sorelle, 313 F.2d 10, 13 (10th Cir. 1963); and Burlington N. R.R. Co. v. Dep't. of Rev. of Wash., 934 F.2d 1064, 1071-2 (9th Cir. 1991).  Since the power does not depend on the parties' consent, a district court may properly act *sua sponte*. *In re* Sunrise Securities Litigation, 124 F.R.D. 99 at fn. 2 (E.D.Pa. 1989); Stauble, 977 F.2d at 694 (court may appoint a master even over objection of one or more of the parties).  An appointment, however,  may be challenged on the basis of bias or conflict of interest. 9 James W. Moore, *et al.,* Moore's Federal Practice, ¶53.11[5][a] (3rd ed. 2001).

Mr. Petranto has exercised his opportunity to challenge this *sua sponte* appointment. When questioned as to whether he challenged Ms. Gabin's impartiality, the Defendant's counsel, Mr. Stripp, indicated he wanted to talk to her off the record.  Following this conference, he further indicated only that he wanted her resume to be made a part of the record.  It is included herein as Attachment A.

Ms. Gabin brings to the court many years of experience in a variety of settings in the New Mexico water arena. *See* Attachment A.  She has spent six years in the service of this District Court as a special master for water rights cases.  She does not have an outside practice which would interfere with, provide conflict with, or distract her from her duties

with the Court.  She has extensive experience in the practical, administrative, and policy areas of water law.  She has tremendous experience in water adjudication case management.  She also is an experienced mediator which can only facilitate the management of issues and attorneys.

District Judge Santiago Campos interviewed Ms. Gabin prior to her appointment as a special master in several water adjudications[8] arising in northern New Mexico.  The Judge questioned her thoroughly about her past and current experiences as an advocate in water cases.  The subject of her employment with the State Engineer's Office was discussed in great detail.  When her appointment was challenged by the Pueblo of Taos, the Court stated that "she has served satisfactorily, with dispatch, and without objection in those cases" and that it was "convinced of her impartiality and ability to handle the claims of all parties fairly." State of New Mexico *ex rel.* State Engineer v. Abeyta, *et al.*, 69cv07896 & 69cv07939, March 3, 1995 Memorandum Opinion and Order (Doc. 2321) at p. 6.  Judge Campos' successor, Judge John Edwards Conway has also found her work invaluable.  This Court concurs.

Like Judges Campos and Conway, this Court has examined Ms. Gabin's resume, her past work experience and organizational memberships.  The Court is convinced of her impartiality and her ability to handle the all parties' claims fairly and effectively and to move this case forward in an expeditious manner.

---

[8] See fn. 4.

IT IS HEREBY ORDERED that Defendant Petranto's Motion to Revoke Reference to Special Master and to Stay Further Proceedings Before Special Master in this case is hereby DENIED.

Dated in Albuquerque:  __6__ Day of June 2001.

⁄electronic signature⁄
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE