# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

---

**UNITED STATES OF AMERICA, for itself and as Trustee for the Zuni Indian Tribe, Navajo Nation, and Ramah Band of Navajos, and STATE OF NEW MEXICO,** *ex rel.* **STATE ENGINEER,**

        Plaintiffs,

and

**ZUNI INDIAN TRIBE and NAVAJO NATION,**

        Plaintiffs-in Intervention,

v.

**STATE OF NEW MEXICO, COMMISSIONER OF PUBLIC LANDS, and A & R PRODUCTIONS,** *et al.,*

        Defendants.

No. CIV 01-072 BB/WDS

**ZUNI RIVER BASIN ADJUDICATION**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court for consideration of objections filed by Defendant Joann Strickland Trust (Doc. 2490) to a report and recommendation issued by the Special Master assigned to this adjudication. The Special Master recommended denial of Defendant's motion to set aside a default judgment that has been entered in Defendant's subfile proceeding. Having reviewed the record, the Special Master's report, the pleadings of the parties, and the applicable

law, the Court will grant the motion to set aside the default judgment and reinstate this subfile as an active proceeding.

**Procedural History:** The procedural history of this subfile proceeding is important, because it establishes the main reason the motion to set aside will be granted -- if the Court had been aware of the entire procedural history at the time the motion for default was filed, the motion would have been denied, and no default would have been entered. Over four years ago, an amended procedural and scheduling order was filed in this stream adjudication. [Doc. 387] According to that order, subfile Defendants who objected to a proposed consent order were required to submit a request for consultation to the United States; Defendant claims she did so in November of 2005, and the Court has no reason to doubt that assertion.[1] The procedural order also provided that the United States should request the Clerk of Court to enter a default against claimants who failed to sign and return a consent order or failed to file a form answer by January 10, 2006. [Doc. 387, p. 7 ¶ 3].

Defendant did not file an answer or return a consent order by January 10, 2006. However, on February 8th, she did attend the aforementioned consultation session regarding her mother's and sister's subfile. In addition, she filed a form answer on February 24, 2006, in which she objected to the description of her water rights contained in the proposed consent order. [Doc. 495] Thus, although she did not file her answer by the January 10, 2006 deadline, she did

---

[1] It is undisputed that Defendant attended a consultation session concerning a different subfile proceeding, involving her mother, sister, and brother-in-law. This action corroborates her claim that she submitted a request for consultation to the government, as there would be little reason for her to attend a consultation session that did not concern her if she did not believe it would help her prepare for her own expected session. The Court notes it will refer to Defendant as "she" and "her" for ease of reference, although the named Defendant is the Trust rather than Ms. Strickland herself.

in fact file an answer and did so well before any further proceedings occurred in her case. Almost three years later, despite the fact that Defendant had filed her answer, Plaintiffs filed a motion for entry of default. [Doc. 2077] This motion recited the fact that Defendant had not filed an answer by the January 10, 2006 deadline established in the scheduling order, but neglected to mention the fact that she did file an answer, albeit a late one, in February 2006.[2] On February 2, 2009, the clerk of this court filed a Clerk's Certificate of Default, again reciting Defendant's failure to file an answer by the January 10 deadline, and again neglecting to point out that a late answer had in fact been filed. [Doc. 2094] Almost immediately, on February 4,

---

[2] It is not clear to the Court why this motion neglected to mention that a late answer had in fact been filed. Plaintiffs were aware of this fact; counsel for the United States mentioned the answer in an e-mail dated February 9, 2009 [Doc. 2322, Exh. A], and Plaintiffs discussed the contents of the answer in their subsequent motion for default judgment or, in the alternative, for summary judgment. [Doc. 2095] Plaintiffs should have confronted the existence of the answer head-on in their motion for entry of default, rather than attempting to ignore the fact that an answer had been filed. Instead, the fact that an answer had been filed was omitted from the motion papers, leaving the misleading impression that Defendant failed to file any answer at all. This in turn led to the Clerk's Certificate of Default, and ultimately to this Court's entry of a default judgment. The Court may be partly at fault here, for not noticing the mention of Defendant's answer in the summary-judgment portion of Plaintiffs' motion for default judgment. However, if Plaintiffs had been completely open in their disclosures in the prior motion for entry of default, the Court would have been able to address the true issue in the case – the fact that Defendant's answer was filed six weeks late – at the proper time. Once the wheels were set in motion by the clerk's entry of default, it became easy to rely on that ground for granting judgment rather than carefully analyzing the summary-judgment portion of Plaintiffs' later motion. In a "normal" case, Plaintiffs' counsel could perhaps be expected to rely on the opposing party to point out the fact that an answer had been filed, although good practice would require the disclosure of the existence of an answer even in a "normal" case. This, however, is not a "normal" case. Many of the Defendants, including this particular Defendant, are representing themselves *pro se* or have done so for at least a portion of the proceedings. Furthermore, the case involves a great number of parties and pleadings, and the Court expects to be able to rely on counsel to provide full information rather than having to search the record for any pleading that might involve a particular Defendant. The Court has no wish to rely on procedural errors committed by *pro se* litigants to decide issues as important as the extent of the litigants' water rights.

2009, Plaintiffs filed their motion for default judgment or, in the alternative, for summary judgment.  [Doc. 2095]

At this point Defendant made a procedural error.  Instead of filing a pleading with the Court explaining why default was not warranted, Defendant contacted counsel for the United States and informed him that she had indeed filed a request for consultation concerning her subfile.  [Doc. 2208, Exh. A]  Defendant was apparently under the mistaken belief that counsel for the United States, given this information, would act on her behalf and withdraw the motion for default judgment.  This mistaken belief may have arisen because her current counsel, who was not representing Defendant at the time, had a conversation with Defendant's brother-in-law concerning the motion for default judgment, and told the brother-in-law Defendant might want to contact counsel for the United States directly to discuss the request for consultation she had submitted.  [Doc. 2525, Exhibit]  Rather than withdrawing the request for default or informing the Court of this *pro se* litigant's claim that she had complied with the requirements of the amended scheduling order, counsel for the United States apparently did nothing.  In due course, on March 24, 2009, the Court entered a default judgment on the basis of the representations made in Plaintiffs' pleadings.  [Doc. 2208]  This was followed by the current attempts to set aside or reopen that judgment.

**Discussion:**  As is apparent from the foregoing discussion of the procedural history, the Court is not impressed with Plaintiffs' attempt to obtain judgment by default rather than allowing Defendant to litigate the merits of her claimed water rights.  Defendant is not a litigant who stood by and did nothing.  She submitted a request for consultation, although it is not clear what happened to it and it would have been advisable for her to keep a copy of it as definitive proof of

4

her actions. She attended a consultation session to become informed about how such a session would work, the better to prosecute her own claims to water rights. When no such session was scheduled for her, she filed a form answer anyway.[3] After the motion for default judgment was filed, she did not simply fail to respond as Plaintiffs contend; she unfortunately chose the wrong means of responding, by attempting to negotiate with opposing counsel rather than filing a pleading with the Court. Finally, once the default judgment was issued, Defendant promptly retained her current counsel and filed a motion to set aside the default within three weeks. Thus, while Defendant's actions were not procedurally perfect, she has consistently expressed a desire to participate in the process and litigate her claims on the merits.

It is axiomatic that default judgments are not favored, and there is a strong preference for allowing parties to litigate the merits of cases. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009); *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970). This is especially true where, as here, no default in fact occurred, as an answer was filed. The fact that the answer was late does not make a default appropriate, in the absence of bad faith on the part of Defendant and in light of the fact that Plaintiffs suffered no prejudice of any kind during the six weeks or so that elapsed between January 10, 2006 and the filing of Defendant's answer. *See Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486 (10th Cir. 1995) (where no bad faith has been shown, a court can allow late answer to be filed where appropriate, even when late filing is due to carelessness or mistake). The Court specifically finds that Defendant's neglect, if any, was

---

[3]Again, it would have been advisable for Defendant to obtain permission from opposing counsel or the Court to file the late answer, as this would have prevented the issuance of the default judgment. However, the Court does not expect *pro se* litigants to understand all the nuances of proper legal practice.

excusable. She delayed filing an answer while waiting for a consultation session to be scheduled, which was entirely reasonable since the procedure contemplated by the amended scheduling order required a consultation to be held before an answer should be filed. Under the circumstances of this case, the default judgment should not have been entered in the first place, and it is appropriate to set it aside at this time.[4]

The Court notes the Special Master's report and recommendation addresses the legal sufficiency of Defendant's late-filed answer. Also, Plaintiffs' motion for default judgment requests, in the alternative, summary judgment on the grounds that Defendant's late-filed answer does not provide a legal basis to contest the amount of water offered in the proposed Consent Decree. In other words, both the Special Master and Plaintiffs argue that Defendant should be bound by the contents of the answer she filed, and by default be precluded from litigating any other grounds she might have for challenging the Consent Decree. It is clear, however, that Defendant has always disagreed with the extent of the water rights she has been offered, and has attempted to challenge the Consent Decree to the best of her ability. It is also clear that a default judgment should not have been entered against her in the first place, since she did submit a request for consultation and did file an answer in this proceeding. Finally, no undue prejudice will be caused Plaintiffs if they are forced to litigate the extent of Defendant's water rights on the merits rather than by an unjustified default judgment. Therefore, in the interests of justice,

---

[4]The Court notes and rejects Plaintiffs' argument that if this Defendant is allowed to reopen the default judgment, the management of the stream adjudication will be threatened because it will provide precedent for other *pro se* litigants attempting to reopen defaults. It is highly unlikely that many other *pro se* litigants have gone to the same lengths as Defendant has to assert their claims and to attempt to comply with procedural requirements. The Court views this as a highly atypical case, rather than the tip of an iceberg that could allegorically sink this adjudication.

Defendant will be allowed to amend her answer to raise the defenses she has asserted in her motion to set aside the default judgment and in her objections to the Special Master's report. *See Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (district court did not abuse discretion in allowing amendment of answer shortly before trial began; refusal of leave to amend is generally only justified upon a showing of, *inter alia*, undue delay, undue prejudice to the opposing party, or bad faith or dilatory motive). The Special Master has discretion to decide whether Defendant should raise these defenses by completing the consultation process or should present her relevant evidence in some other manner.

Dated this 16th day of March, 2010.

_____
BRUCE D. BLACK
United States District Judge