# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF NEW MEXICO, ex rel. STATE ENGINEER,<br><br>        Plaintiffs,<br><br>and<br><br>ZUNI INDIAN TRIBE, NAVAJO NATION,<br><br>        Plaintiffs in Intervention,<br><br>v.<br><br>A & R PRODUCTIONS, et al.,<br><br>        Defendants. | No. 01-cv-0072 MV/WPL<br><br>ZUNI RIVER BASIN ADJUDICATION<br><br>**Subfile No.** ZRB-2-0014 |

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

At issue are Edward and Suzan Bawolek's ("Bawoleks") motion for partial summary judgment (Doc. 3006) and the cross-motion for summary judgment filed by the United States (Doc. 3013). The Bawoleks request that this Court grant partial summary judgment with regard to well 10C-4-W14 and award this well a water right of 3.188 acre-feet per year ("AFY"). The United States requests that this Court grant summary judgment as to all water rights in the Zuni River Basin ("the Basin") associated with the real property owned by the Bawoleks and determine those rights to be in accordance with the United States' and the State of New Mexico's ("Plaintiffs") determinations found in the Joint Status Report (Doc. 2954 Ex. 1).

The record in the Basin adjudication, and for the Bawolek subfile, is extensive. I do not address, beyond what is necessary for the determination of these motions, the factual or

procedural history of this case. Having considered the parties' filings and the relevant law, I recommend that the Court deny the Bawoleks' motion for summary judgment as to well 10C-4-W14, and grant the United States' cross-motion for summary judgment.

## STANDARD OF REVIEW

Because the Bawoleks proceed pro se, I construe their pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, *N.M.*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Liberal construction requires courts to make some allowance for pro se litigants' "failure to cite proper legal authority, [their] confusion of various legal theories, [their] poor syntax and sentence construction, or [their] unfamiliarity with pleading requirements[.]" *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.* (citation omitted).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). Once the moving party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The nonmovant must identify these facts by reference to "affidavits, deposition transcripts, or specific exhibits incorporated therein."

*Adler*, 144 F.3d at 671. A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.* A mere "scintilla" of evidence is insufficient to successfully oppose a motion for summary judgment. *Id.* at 252. The record and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmovant. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

Both the United States and the Bawoleks moved for summary judgment. The Bawoleks seek summary judgment only with respect to well 10C-4-W14; the United States seeks summary judgment as to all water rights associated with the Bawolek property. I approach these motions from the standpoint of the United States as the movant.

The burden of establishing a water right would be on the Bawoleks, as the users of water, regardless of which party moved for summary judgment. Where the burden of persuasion at trial would be on the nonmovant, the movant can meet Rule 56's burden of production by either (1) providing affirmative evidence negating an essential element of the nonmovant's claim or (2) showing the Court that the nonmovant's evidence is insufficient to demonstrate an essential element of the nonmovant's claim. *Celotex*, 477 U.S. at 331 (citations omitted). Evidence provided by either the movant or the nonmovant need not be submitted "in a form that would be admissible at trial." *Id.* at 324. Rather, the content of the evidence presented must be capable of being presented in an admissible form at trial. *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006). For example, parties may submit affidavits to support or oppose a motion for summary judgment, even though the affidavits constitute hearsay, provided that the information can be presented in another, admissible form at trial, such as live testimony. *See* FED. R. CIV. P.

56(c)(4); *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010); *Trevizo*, 455 F.3d at 1160.

## DISCUSSION

The parties seek adjudication of the water rights associated with six wells and twenty-two stock ponds on the Bawoleks' property.[1] I address each well individually and the stock ponds as a group.

New Mexico state law provides the substantive standards for this adjudication. (Doc. 2954 at 2.) The Constitution of the State of New Mexico provides that "[t]he unappropriated water . . . within the state . . . is hereby declared to belong to the public." N.M. CONST. Art. 16 § 2. "Beneficial use shall be the basis, the measure and the limit of the right to the use of water." *Id.* at § 3. That is, a water user may acquire the right to use water through beneficial use. N.M. STAT. ANN. § 72-1-2; *State ex rel. Erickson v. McLean*, 308 P.2d 983, 987 (N.M. 1957). "Beneficial use" means the "direct use or storage and use of water by man for a beneficial purpose including, but not limited to, agricultural, municipal, commercial, industrial, domestic, livestock, fish and wildlife, and recreational uses." N.M. CODE R. 19.26.2.7(D) (2014). Adjudicated water rights decrees must declare "the priority, amount, purpose, periods and place of use." N.M. STAT. ANN. § 72-4-19.

"The burden of proof with respect to quantifying a water right in a stream system adjudication falls squarely on a defendant, or the user of the water right." *State v. Aamodt*, No. Civ. 66-6639 MV/WPL, Subfile PM-67833, Doc. 8119 at 6 (D.N.M. Feb. 24, 2014) (unpublished) (citing *Pecos Valley Artesian Conservancy Dist. v. Peters*, 193 P.2d 418, 421-22

---

[1] The wells are identified individually as 10C-4-W08, 10C-4-W11, 10C-4-W12, 10C-4-W13, 10C-4-W14, and 10C-4-W16. (Doc. 2954 Ex. A.) The stock ponds are identified individually as 10C-4-SP14, 10C-4-SP19, 10C-4-SP20, 10C-4-SP21, 10C-4-SP22, 10C-4-SP23, 10C-4-SP24, 10C-4-SP25, 10C-4-SP26, 10C-4-SP27, 10C-4-SP28, 10C-4-SP29, 10C-4-SP30, 10C-4-SP31, 10C-4-SP32, 10C-4-SP34, 10C-4-SP35, 10C-4-SP36, 10C-4-SP37, 10C-4-SP38, 10C-4-SP39, and 10C-4-SP40. (*Id.*)

(N.M. 1948)). For purposes of this adjudication, the Plaintiffs "announced that the amount of water to be offered water rights claimants for domestic wells would be the higher of 0.7 [AFY], or an amount equivalent to historical beneficial use." (Doc. 733 at 1-2.)

**I.    Wells**

The United States moved for summary judgment with regard to all of the water rights associated with the Bawolek property; the Bawoleks moved for summary judgment only with respect to well 10C-4-W14. The Bawoleks dispute various aspects of each claim. The burden is on the Bawoleks to justify a water right above that which was offered by the Plaintiffs. (Doc. 2985 at 2-3.)

A. *Well 10C-4-W08*

The Plaintiffs argue that well 10C-4-W08 is entitled to a water right of 1.568 AFY for non 72-12-1 domestic and livestock use.[2] (Doc. 2954 Ex A.) The Bawoleks contend that this well is entitled to a water right of 3.127 AFY for non 72-12-1 multiple domestic use, livestock watering, and wildlife benefit. (*Id.*) The parties agree that the well has a priority date of December 31, 1981. (*Id.*)

The Bawoleks contend that 10C-4-W08 serves two domestic residences, has a wildlife benefit, and supplies water for stock pond 10C-4-SP14. (Doc. 2918 Ex. 2 at 1.) The Bawoleks claim 1.4 AFY for domestic use, which appears to be uncontested by the Plaintiffs, and an additional 1.73 AFY to fill 10C-4-SP14. (*Id.* at 1-3.) The Plaintiffs offer 1.4 AFY for domestic purposes and an additional 0.168 AFY for livestock purposes, including the attendant use by wildlife. (Doc. 3013 Ex. 1 at 4.)

The Bawoleks also contend that water from 10C-4-W08 has historically benefitted wildlife—elk, in particular. The Plaintiffs incorporated wildlife into their determination of water

---

[2] "72-12-1" refers to N.M. STAT. ANN. § 72-12-1.

rights for livestock purposes, but disagree that a wildlife benefit should be a listed purpose for the water right. (Doc. 3013 Ex. 1 at 3-4.) The Bawoleks failed to produce evidence establishing that 10C-4-W08 has historically been used for a wildlife benefit. Because the Bawoleks have not met their burden of demonstrating that water from 10C-4-W08 was beneficially used to support wildlife, a "wildlife benefit" is not an appropriate stated purpose for this well.

As support for the additional 1.73 AFY, the Bawoleks state that they have been "actively utilizing this well for the purpose of filling Stock Pond 10C-4-SP14, and in the period from 8/20/2011 to 10/13/2013 have introduced 3.71 acre-feet of water into said stock pond . . . [with] an average annualized production of 1.73 [AFY] into said stock pond for the measuring period." (Doc. 2918 Ex. 2 at 3.) The Bawoleks argue that the United States has previously recognized that a water right associated with a well "must contemplate its use for filling a stock pond or impoundment" when that well is a point of diversion supplying the stock pond. (*Id.* at 4 (citing Doc. 1125).) The Bawoleks state that there is a spigot at 10C-4-SP14, over five hundred yards from the nearest residence, and connected to 10C-4-W08. (*Id.* at 2.) However, the Bawoleks present no evidence as to when the spigot was installed or how much water was used before 2011.

The Bawoleks did not produce any evidence that 10C-4-W08 has been used to fill 10C-4-SP14 since the end of 1981 or how much water was used to fill that stock pond. The fact that the Bawoleks have pumped hundreds of thousands of gallons of water from 10C-4-W08 since December 2010 does not constitute "historic beneficial use" for the purposes of establishing a water right. I find that the historic beneficial use for 10C-4-W08 is 1.568 AFY for the purpose of non 72-12-1 domestic use and livestock watering.

B. *Well 10C-4-W11*

The parties agree that well 10C-4-W11 is entitled to a water right of 0.168 AFY with a priority date of January 1, 1980, but dispute the purpose of that use. The Plaintiffs argue that the purpose is for non 72-12-1 livestock watering; the Bawoleks contend that the purpose is for Non 72-12-1 livestock watering and wildlife benefit. (Doc. 2954 Ex. A.)

As noted above, the Plaintiffs took wildlife use and benefit into account when calculating the appropriate water right for each well associated with livestock use. (Doc. 3013 Ex. 1 at 3-4.) The Bawoleks failed to produce evidence establishing that 10C-4-W11 has historically been used for a wildlife benefit. Because the Bawoleks have not met their burden of demonstrating that water from 10C-4-W11 was beneficially used to support wildlife, a "wildlife benefit" is not an appropriate stated purpose for this well. Therefore, I agree with the United States that the purpose of the water right associated with 10C-4-W11 is for non 72-12-1 livestock watering.

C. *Well 10C-4-W12*

The parties agree that well 10C-4-W12 is entitled to a water right of 0.168 AFY with a priority date of January 1, 1980, but dispute the purpose of that use. The Plaintiffs argue that the purpose is for non 72-12-1 livestock watering; the Bawoleks contend that the purpose is for non 72-12-1 livestock watering and wildlife benefit. (Doc. 2954 Ex. A.)

As noted above, the Plaintiffs took wildlife use and benefit into account when calculating the appropriate water right for each well associated with livestock use. (Doc. 3013 Ex. 1 at 3-4.) The Bawoleks failed to produce evidence establishing that 10C-4-W11 has historically been used for a wildlife benefit. Because the Bawoleks have not met their burden of demonstrating that water from 10C-4-W11 was beneficially used to support wildlife, a "wildlife benefit" is not an

appropriate stated purpose for this well. Therefore, I agree with the United States that the purpose of the water right associated with 10C-4-W12 is for non 72-12-1 livestock watering.

D.  *Well 10C-4-W13*

The Plaintiffs argue that well 10C-4-W13 is entitled to a water right of 0.168 AFY for non 72-12-1 livestock watering. (Doc. 2954 Ex. A.) The Bawoleks counter that this well is entitled to a water right of 0.880 AFY for non 72-12-1 multiple domestic use, livestock watering, and wildlife benefit. (*Id.*) The parties agree that the well has a priority date of January 1, 1980. (*Id.*)

The Bawoleks argue that, because this well has a priority date before the declaration of the Basin, water usage alone should determine the extent of the water right. However, the Bawoleks fail to consider that the Constitution of the State of New Mexico specifically states that "beneficial use" determines the extent of any water right. N.M. CONST. Art. 16 § 3. The Bawoleks are still required to show beneficial use to prove the quantity of their water right.

The Bawoleks argue that 10C-4-W13 should qualify for a water right under *State ex rel. Reynolds v. Mendenhall*, in which the New Mexico Supreme Court recognized a water right when the landowner commenced drilling a well before the declaration of an artesian basin and "proceeded diligently to develop the water and place it to beneficial use." 362 P.2d 998, 1004 (N.M. 1961). The Bawoleks assert that the previous owners intended to build a cabin on the property that was to be serviced by the well. However, nothing in the record indicates that the cabin was ever built or that the well actually provided domestic use. In fact, the previous owner wrote to Mr. Bawolek that he "cannot attest to domestic use of the water" pumped from 10C-4-W13. (Doc. 2918 Ex. 2 at 6.). The mere intention to build a cabin does not create a *Mendenhall* right and establish historic domestic use.

The Bawoleks have not come forth with evidence sufficient to justify an increase in the water right associated with 10C-4-W13 above 0.168 AFY. As noted above, the Plaintiffs took wildlife use and benefit into account when calculating the appropriate water right for each well associated with livestock use. (Doc. 3013 Ex. 1 at 3-4.) The Bawoleks failed to produce evidence establishing that 10C-4-W11 has historically been used for a wildlife benefit. Because the Bawoleks have not met their burden of demonstrating that water from 10C-4-W13 was beneficially used to support wildlife, a "wildlife benefit" is not an appropriate stated purpose for this well. I find that 10C-4-W13 is entitled to a water right of 0.168 AFY for the purpose of non 72-12-1 livestock watering.

E.  *Well 10C-4-W14*

The Plaintiffs contend that well 10C-4-W14 is entitled to a water right of 1.088 AFY for non 72-12-1 domestic and livestock use. (Doc. 2954 Ex. A.) The Bawoleks argue that this well is entitled to a water right of 3.188 AFY for non 72-12-1 multiple domestic use, livestock watering, and wildlife benefit. (*Id.*) The parties agree that the well has a priority date of December 31, 1939. (*Id.*)

The Bawoleks claim that there are four residences on the property that have been simultaneously inhabited and served by 10C-4-W14, and that even if the four residences were not simultaneously inhabited and served, the well is entitled to 3.188 AFY based on independently demonstrated historic beneficial use. In support of their contention that four residences were simultaneously served, the Bawoleks produced the written report of archaeologist Douglas H. M. Boggess, MA, RPA. (Doc. 3006 Ex. 2.) The parties disagree as to what Mr. Boggess actually determined and the way to interpret his report.

The Bawoleks argue that Mr. Boggess's report shows that the four residences were simultaneously inhabited between 1939 and 1951, that 10C-4-W14 was the only well on the property and the closest well to all of the homes, and that 10C-4-W14 therefore necessarily served all domestic needs for those residences. The Plaintiffs counter that Mr. Boggess's report does not establish that the residences were simultaneously occupied, and that even if they were, there is no evidence that three of the residences relied on 10C-4-W14 for domestic use. The Bawoleks reply that it is illogical to assume that four historic residences existed in New Mexico without municipal water service and did not rely on the nearest well for water.

Mr. Boggess identified overlapping habitation dates for the four residences of 1937-1951. (Doc. 3006 Ex. 2 at 6.) He did not opine on the ultimate issue of whether the residences relied on 10C-4-W14 for domestic water purposes.

The Plaintiffs attached the affidavit of Scott Turnbull, an Associate Engineer with Natural Resources Consulting Engineers, Inc. (Doc. 3012 Ex. 1.) Mr. Turnbull concluded that 10C-4-W14 is connected by piping to five stock ponds and served a now defunct drip irrigation system. (*Id.* at 2-3.) Mr. Turnbull therefore concluded that 10C-4-W14 served some irrigation purposes in the past and would require 0.22 AFY to irrigate the shrub-type plants on the Bawoleks' property. (*Id.* at 5.) Finally, he noted that the three disputed residences were a minimum of 0.68 miles from 10C-4-W14 and that none of the residences were connected to the well by piping. (*Id.* at 6.)

Even if I assume that the four residences were simultaneously inhabited between 1939 and 1951,[3] there is no evidence—anecdotal or otherwise—to suggest that the other three residences actually relied on 10C-4-W14 for domestic purposes. Mere assumption is insufficient

---

[3] I consider the period from 1939-1951, even though Mr. Boggess identified overlapping dates beginning in 1937, because the well was not drilled until 1939. (*See* Doc. 2954 Ex. A.)

to establish a water right. *See Aamodt*, No. Civ. 66-6639 MV/WPL, Subfile PM-67833, Doc. 8119 at 6.

As to the Bawoleks' second argument—that they independently demonstrated their historic beneficial use—they contend that they measured well production for 309 days ending on December 30, 2007, and that the well produced "an annualized usage of 5.48 [AFY]." (Doc. 3006 Ex. 1 at 10.) The Bawoleks used the water to fill five stock ponds on their property. The Plaintiffs respond that simply connecting a stock pond to a well by pipe does not increase the quantity of a water right.

I agree. The Bawoleks presented no evidence suggesting that the stock ponds were connected to 10C-4-W14 by pipe before the Bawoleks began measuring or that the well was historically used to fill the stock ponds. Such a substantial increase in a water right cannot be justified by mere speculation. As noted above, the Plaintiffs took wildlife use and benefit into account when calculating the appropriate water right for each well associated with livestock use. (Doc. 3013 Ex. 1 at 3-4.) The Bawoleks failed to produce evidence establishing that 10C-4-W14 has historically been used for a wildlife benefit. Because the Bawoleks have not met their burden of demonstrating that water from 10C-4-W14 was beneficially used to support wildlife, a "wildlife benefit" is not an appropriate stated purpose for this well. I find that 10C-4-W14 is entitled to a water right of 1.088 AFY for the purpose of non 72-12-1 domestic use and livestock watering.

F. *Well 10C-4-W16*

Plaintiffs argue that well 10C-4-W16 is entitled to a water right of 0.168 AFY for non 72-12-1 livestock watering. (Doc. 2954 Ex. A.) The Bawoleks counter that this well is entitled to a

water right of 0.295 AFY for non 72-12-1 livestock watering and wildlife benefit. (*Id.*) The parties agree that the well has a priority date of December 31, 1971. (*Id.*)

The Bawoleks assert that improvements have been made to this well to increase pumping capacity and that the well produced 0.295 AFY for the period between August 18, 2010, and October 11, 2013. (Doc. 2918 Ex. 3 at 2.) The Bawoleks again try to assert a *Mendenhall* right for "potentially supplementing stock pond 10C-4-SP35 or a new retention to supplement irrigation and fish and wildlife." (*Id.*)

*Mendenhall* rights do not apply to future, potential uses, but rather to uses that were in construction and have been continuously and diligently pursued since the digging of the well, prior to the declaration of the Basin. 362 P.2d at 1004. The Bawoleks' *Mendenhall* argument, as discussed above, fails.

Increasing the pumping capacity of the well does not constitute historic beneficial use. Nor can some potential future use qualify as historic beneficial use. The Bawoleks failed to produce any evidence establishing historic beneficial use beyond the 0.168 AFY stipulated to by the Plaintiffs. As noted above, Plaintiffs took wildlife use and benefit into account when calculating the appropriate water right for each well associated with livestock use. (Doc. 3013 Ex. 1 at 3-4.) The Bawoleks failed to produce evidence establishing that 10C-4-W16 has historically been used for a wildlife benefit. Because the Bawoleks have not met their burden of demonstrating that water from 10C-4-W16 was beneficially used to support wildlife, a "wildlife benefit" is not an appropriate stated purpose for this well. Therefore, I find that 10C-4-W16 is entitled to a water right of 0.168 AFY for the purpose of non 72-12-1 livestock watering.

## II. Stock Ponds

The parties agree on the amount and priority dates for the water rights associated with each stock pond. (Doc. 2954 Ex. A.) The Plaintiffs contend that the stock ponds are entitled to water rights for the purpose of livestock, and the Bawoleks counter that the purpose is for livestock watering and wildlife benefit. (*Id.*)

As noted above, the Plaintiffs took wildlife use and benefit into account when calculating the appropriate water right for each well associated with livestock use. (Doc. 3013 Ex. 1 at 3-4.) The Bawoleks failed to produce evidence establishing that the stock ponds have historically been intended for a wildlife benefit. Because the Bawoleks have not met their burden of demonstrating that water from the stock ponds was beneficially used to support wildlife, a "wildlife benefit" is not an appropriate stated purpose. The stock ponds are entitled to the quantity and priority date of water rights agreed upon by the parties, for the purpose of non 72-12-1 livestock watering. (*See* Doc. 2954 Ex. 1.) The historic source of the water for the stock ponds appears to be surface water, based on the lack of piping to most of the stock ponds and the lack of evidence establishing historic filling of the stock ponds from the wells. Therefore, the source of the water for the stock ponds shall be surface water.

## CONCLUSION

As explained above, I find that the Bawoleks failed to produce any evidence showing that the water features on their property are entitled to water rights above and beyond those stipulated to by the Plaintiffs. I further find that the Bawoleks failed to produce evidence showing that all of the water features should have the additional purpose of "wildlife benefit." For the foregoing reasons, I recommend that the Court deny the Bawoleks' Partial Motion for Summary Judgment, and grant the United States' Motion for Summary Judgment as outlined above.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
William P. Lynch
United States Magistrate Judge