# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and STATE OF NEW MEXICO, ex rel. STATE ENGINEER, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| and | ) ) | No. 01-cv-0072 MV/WPL |
| ZUNI INDIAN TRIBE, NAVAJO NATION, | ) ) | ZUNI RIVER BASIN ADJUDICATION |
| Plaintiffs in Intervention, | ) ) | |
| v. | ) ) | **Subfile No.** ZRB-2-0038 |
| A & R PRODUCTIONS, et al., | ) ) | |
| Defendants. | ) | |

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

At issue are pro se Subfile Defendants Craig and Regina Fredrickson's ("the Fredricksons") motion for summary judgment (Doc. 3305), the cross-motion for summary judgment filed by the United States and the State of New Mexico (collectively, "Plaintiffs") (Docs. 3315, 3317), the Plaintiffs' motion to exclude expert opinion testimony (Doc. 3316), and the Fredricksons' request for sanctions (Doc. 3320 at 12-15). The Fredricksons request that this Court grant summary judgment in their favor and declare, among other things, that the well on their land is entitled to a livestock watering water right of 3.779 acre feet per year ("AFY"). The sole dispute in this case is the extent, if any, of a livestock watering right for well 10A-5-W06. The parties have already agreed that well 10A-5-W06 is entitled to a domestic use water right of 0.7 AFY. The Plaintiffs request that this Court grant summary judgment in their favor and

declare, among other things, that the well on the Fredricksons' land is not entitled to any water right for livestock watering.

The record in the Basin adjudication is extensive. I do not address, beyond what is necessary for the determination of these motions, the factual or procedural history of this case. Having considered the parties' filings and the relevant law, I recommend that the Court grant the Plaintiffs' motion to exclude expert testimony, deny the Fredricksons' request for sanctions, deny the Fredricksons' motion for summary judgment, and grant the Plaintiffs' motion for summary judgment, as described herein.

## MOTION TO EXCLUDE EXPERT TESTIMONY

On June 27, 2016, Craig Fredrickson tendered to the Plaintiffs the third and final draft of his purported expert report. Mr. Fredrickson purports to render five opinions: 1) that the priority date for well 10A-5-W06 is December 31, 1955; 2) that the historic, beneficial use of well 10A-5-W06 included livestock watering from 1955 through 2000; 3) that the place of use of well 10A-5-W06 is S. 19 T. 5N R. 18W NE NE NW; 4) that the period of use of well 10A-5-W06 for livestock watering was throughout the year—twelve months; and 5) that "[w]ith a reasonable degree of scientific certainty, the maximum amount of groundwater diverted through well 10A-5-W06 for beneficial purpose of livestock watering was 3.779 [AFY]." (Doc. 3305 Ex. 7 at 4-5.)

### I.      Standard of Review

The first step when confronted with a motion to exclude expert testimony is to determine which parts of the proposed testimony are indeed expert testimony under Federal Rule of Evidence 702 and which are lay testimony under Federal Rule of Evidence 701. Lay witnesses may opine on those matters that are "(a) rationally based on the witness's perception; (b) helpful

2

to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701.

The admissibility of expert testimony is analyzed under *Daubert* and Federal Rule of Evidence 702, pursuant to which judges must serve as gatekeepers to keep scientific and other expert testimony that is not reliable and relevant out of the courtroom. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596-97 (1993). For expert testimony to be admissible, the judge must ensure that the expert is sufficiently qualified to give the opinion, the expert's methodology must be sufficiently reliable, and the testimony must assist the trier of fact to understand an issue in the case. *Id.* In *Kumho Tire*, the Supreme Court made clear that the *Daubert* framework applies not only to scientific testimony, but to all expert testimony. *Kumho Tire Co v. Carmichael*, 526 U.S. 137, 147 (1999). "In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting FED. R. EVID. 702). "Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*." *Id.* Because "there are many different kinds of experts, and many kinds of expertise," the *Daubert* factors are not a definitive checklist or test and some factors may not be pertinent to assessing the reliability of non-scientific experts. *Kumho Tire*, 526 U.S. at 150; *see generally* William P. Lynch, *Doctoring the Testimony: Treating Physicians, Rule 26, and the Challenges of Causation Testimony*, 33 REV. LITIG. 249, 301-09 (2014).

When considering *Daubert* challenges to expert testimony, courts must be careful to maintain the proper balance between the court's role as gatekeeper and the jury's role as the ultimate fact finder. *McDowell v. Brown*, 392 F.3d 1283, 1299-1300 (11th Cir. 2004). To present expert testimony, a party must show that the methods employed by the expert in reaching his conclusions are based on reliable methodologies and that his opinions are based on facts sufficiently tied to the case. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). When expert testimony meets the *Daubert* standard, the expert may testify and the fact finder decides how much weight, if any, to give that testimony. *Zuchowicz v. United States*, 140 F.3d 381, 387 (2d Cir. 1998).

### II.     Discussion

Plaintiffs' move to exclude Mr. Fredrickson's report and any testimony related thereto on the basis that Mr. Fredrickson is not an expert on the matters upon which he seeks to testify and, even if Mr. Fredrickson is an expert, his opinions are not sufficiently reliable to be considered under *Daubert* and Federal Rule of Evidence 702. (*See generally* Doc. 3316.) The Fredricksons' response is self-defeating: they concede that Mr. Fredrickson is not an expert and contend that his opinion and report are admissible pursuant to Federal Rule of Evidence 701. (Doc. 3320 at 7-12 ("In reality, the opinions or inferences contained within [Mr. Fredrickson's] report do not require any specialized knowledge and could be reached by any ordinary person. As such they do not represent expert opinion.").)

Mr. Fredrickson is a nuclear engineer by training. He has not studied cattle operations or agricultural science, has never raised or run cattle, and has no experience—beyond this litigation—in the historical use of water. (*See* Doc. 3316 Ex. B at 3-7 (C. Fredrickson Dep., July

4

6, 2016, at 13:1-22; 19:9-21; 20:6-11; 36:4-7).) At his deposition, Mr. Fredrickson testified that he is "an expert in conducting technical analysis based upon published data on a wide variety of issues[, a]nd by virtue of the scope of this report [he] made [him]self familiar with publications and data that is [sic] relevant to the topic of the elements of water rights associated with livestock watering." (*Id.* at Ex. B at 9 (C. Fredrickson Dep. 47:8-22).)

"The proponent of the expert testimony bears the burden of showing that the testimony is admissible." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). The Fredricksons explicitly concede that Mr. Fredrickson is not an expert in cattle operations, water rights, divining the quantity of water historically used, or other matters directly on point in this litigation. (Doc. 3320 at 8.) Absent this concession, it remains clear that Mr. Fredrickson is not an expert in cattle operations or qualified to give any of his opinions. Mr. Fredrickson has never "researched, written about, or opined on this topic before," *Conroy*, 707 F.3d at 1169, and admits that his only experience or other qualification for this case is his training as an engineer. I recommend that the Court find that Mr. Fredrickson is not a qualified expert in these matters.

The next question is to determine whether the opinions about which Mr. Fredrickson intends to testify could be admissible as lay testimony. They cannot. Mr. Fredrickson relied on external studies for his analysis, (*see generally* Doc. 3305 Ex. 7 (Fredrickson Expert Report)), admits that he was not personally present at any time when cattle were run on the property, and does not have any personal experience with the historical use of the property. Mr. Fredrickson's proposed testimony is not, and cannot be, "rationally based on [his] perception . . . and . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Because Mr. Fredrickson could not have gained the knowledge about which he proposes to testify through personal experience and without the use of specialized knowledge, his testimony would be expert testimony. However, as discussed above, Mr. Fredrickson is not a qualified expert on these matters. Accordingly, I recommend that the Court grant the Plaintiffs' motion to exclude Mr. Fredrickson's proposed testimony.

### REQUEST FOR SANCTIONS

In their response to Plaintiffs' motion for summary judgment and motion to exclude expert testimony, the Fredricksons request that the Court sanction the Plaintiffs for "fail[ing] to respond to the order of the Court to produce a written expert report from Mr. Turnbull that established the factual basis for the livestock-use component water right as required by the Joint Status Report agreement." (Doc. 3320 at 15.) The relevant portion of the Joint Status Report reads:

> As contemplated under Fed. R. Civ. P. 26(a)(2), Plaintiffs will prepare and produce a written expert report from Mr. Turnbull (or another appropriate expert identified by Plaintiffs) to rebut the opinion of any expert witness retained by Defendants. If Defendants do not produce a written expert report, Plaintiffs will nevertheless prepare a written expert report from Mr. Turnbull that established the factual basis for the livestock use component water right . . . .

(Doc. 3167 Ex. 1 at 6.) The Fredricksons assert that because Plaintiffs concluded that Mr. Fredrickson is not a qualified expert, they were required to produce a written expert report from Mr. Turnbull "that established the factual basis for the livestock-use component water right as required by the Joint Status Report agreement"—which they did not do. (Doc. 3320 at 13 (citation omitted).) As sanction, the Fredricksons argue that the Court should "grant[] default judgement [sic] on [the Fredricksons'] *Motion for Summary Judgment*," pursuant to Federal Rules of Civil Procedure 16(1)(C) and 37(b)(2)(A)(vi). (*Id.*)

The Fredricksons' argument would put opposing parties in an absolutely impossible situation: either concede that a designated individual is a qualified expert and forego any available motion to exclude, without regard for the individual circumstances of the case, or avail themselves of a motion to exclude and be punished for operating as though the designated expert qualified. This result is nonsensical.

In this case, the Fredricksons produced a report from Mr. Fredrickson designated as an expert report. The Fredricksons held Mr. Fredrickson out as an expert throughout discovery. The Plaintiffs operated as though Mr. Fredrickson were a qualified expert and responded by producing a report from Mr. Turnbull, as agreed upon in the Joint Status Report. The Plaintiffs were not precluded from challenging Mr. Fredrickson's designation as an expert or from attempting to exclude the purportedly expert testimony.[1]

The Plaintiffs complied with the scheduling order and the agreement expressed in the Joint Status Report. I recommend that the Court deny the Fredricksons' request for sanctions.

## MOTIONS FOR SUMMARY JUDGMENT

### I.      Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). Once the moving

---

[1] Plaintiffs assert that the motion to exclude filed concomitantly with the cross-motion for summary judgment "was the first opportunity for Plaintiffs to present the issue to the Court for resolution." (Doc. 3327 at 15.) This is not strictly true. While the parties did have a deadline for *Daubert* motions, the deadline does not prohibit parties from filing such motions early. While the Plaintiffs could have filed their motion to exclude prior to the deadline, it was not improper to wait until the deadline.

7

party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The nonmovant must identify these facts by reference to "affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.* A mere "scintilla" of evidence is insufficient to successfully oppose a motion for summary judgment. *Id.* at 252. The record and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmovant. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). When there are cross-motions for summary judgment, each motion is to be treated separately. *Christy v. Travelers Indem. Co. of Am.*, 810 F.3d 1220, 1225 n.3 (10th Cir. 2016).

The burden of establishing a water right would be on the Fredricksons, as the users of water, regardless of which party moved for summary judgment. Where the burden of persuasion at trial would be on the nonmovant, the movant can meet Rule 56's burden of production by either (1) providing affirmative evidence negating an essential element of the nonmovant's claim or (2) showing the Court that the nonmovant's evidence is insufficient to demonstrate an essential element of the nonmovant's claim. *Celotex*, 477 U.S. at 331 (citations omitted). Evidence provided by either the movant or the nonmovant need not be submitted "in a form that would be admissible at trial." *Id.* at 324. Rather, the content of the evidence presented must be capable of being presented in an admissible form at trial. *Trevizo v. Adams*, 455 F.3d 1155, 1160

(10th Cir. 2006). For example, parties may submit affidavits to support or oppose a motion for summary judgment, even though the affidavits constitute hearsay, provided that the information can be presented in another, admissible form at trial, such as live testimony. *See* FED. R. CIV. P. 56(c)(4); *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010); *Trevizo*, 455 F.3d at 1160.

## II.   Discussion

The Fredricksons and the Plaintiffs filed cross-motions for summary judgment. I treat each motion individually.

New Mexico state law provides the substantive standards for this adjudication. (Doc. 2954 at 2.) The Constitution of the State of New Mexico provides that "[t]he unappropriated water . . . within the state . . . is hereby declared to belong to the public." N.M. CONST. Art. 16 § 2. "Beneficial use shall be the basis, the measure and the limit of the right to the use of water." *Id.* at § 3. That is, a water user may acquire the right to use water through beneficial use. N.M. STAT. ANN. § 72-1-2; *State ex rel. Erickson v. McLean*, 308 P.2d 983, 987 (N.M. 1957).[2] "Beneficial use" means the "direct use or storage and use of water by man for a beneficial purpose including, but not limited to, agricultural, municipal, commercial, industrial, domestic, livestock, fish and wildlife, and recreational uses." N.M. CODE R. 19.26.2.7(D) (2014). Adjudicated water rights decrees must declare "the priority, amount, purpose, periods and place of use." § 72-4-19.

"The burden of proof with respect to quantifying a water right in a stream system adjudication falls squarely on a defendant, or the user of the water right." *State v. Aamodt*, No.

---

[2] Unless otherwise noted, all statutory references are to the New Mexico Statutes Annotated, current on Westlaw through the end of 2015.

Civ. 66-6639 MV/WPL, Subfile PM-67833, Doc. 8119 at 6 (D.N.M. Feb. 24, 2014) (unpublished) (citing *Pecos Valley Artesian Conservancy Dist. v. Peters*, 193 P.2d 418, 421-22 (N.M. 1948)).

The parties agree that well 10A-5-W06 is entitled to a domestic use water right of 0.7 AFY, but disagree as to the existence and extent of a livestock use water right.

### A.  The Fredricksons' Motion

The Fredricksons moved for summary judgment in their favor, specifically seeking a declaration that well 10A-5-W06 is entitled to a livestock use water right of 3.779 AFY. The burden is on the Fredricksons to justify a water right above the 0.7 AFY for domestic use purposes that was offered by the Plaintiffs. *Id.*

Because I recommend that the Court strike Mr. Fredrickson's purported expert report, I also must recommend that the Court deny the Fredricksons' motion for summary judgment. Absent the report, the Fredricksons came forth with no evidence supporting their contention that well 10A-5-W06 historically used 3.779 AFY for the purpose of livestock watering.

However, should the Court decline to strike Mr. Fredrickson's purported expert report and instead conclude that the Fredricksons' met their burden of establishing a livestock watering right, I recommend that the Court conclude that any livestock watering right that existed in well 10A-5-W06 was abandoned long ago.

Abandonment is a creature of the common law. *State ex rel. Reynolds v. South Springs*, 452 P.2d 478, 481-82 (N.M. 1969). Abandonment "is the relinquishment of the right by the owner with the intention to forsake and desert it," and intent can be shown by "evidence of the failure of the party charged to use the right, or the water, or to keep the works necessary for the

utilization of the water in repair; and if such nonusage or neglect is continued for an unreasonable period, it may fairly create the presumption of the intention to abandon." *Id.* at 480-81 (quotation omitted).

It is undisputed that no livestock have been run on this property since at least 2000, and thus the well has not been used for livestock watering since that time. The Fredricksons, however, contend that they intend to put the well to future use for livestock watering. (*See, e.g.*, Doc. 3320 at 6.) However, it is undisputed that any livestock watering right for well 10A-5-W06 has not been put to beneficial use for at least 17 years.

In New Mexico, a "protracted period of nonuse" creates a presumption that a water right holder intended to abandon the water right and shifts the burden of proof to the holder of the right to show the reasons for nonuse and to demonstrate the absence of intent to abandon. *State ex rel. Office of State Engineer v. Elephant Butte Irr. Dist.*, 287 P.3d 324, 331 (N.M. Ct. App. 2012) (citing *South Springs*, 452 P.2d at 481-82). The 17-year period of nonuse involved in this case is an unreasonable period of nonuse and creates the presumption of intent to abandon. *See United States v. Abousleman*, No. Civ. 83-1041 MV/WPL, Doc. 3647 at 9 (D.N.M. Jan. 23, 1998) (unpublished) (holding that the Pueblos successfully raised a "presumption of an intent to abandon with a showing of 16 or more years of nonuse of water by the defendant"); *South Springs*, 452 P.2d at 483 (citing with approval Colorado cases that found an unreasonable period of nonuse at forty, thirty, and eighteen years).

While the Fredricksons presented competent and admissible evidence that they have not intended to abandon any livestock water right during their tenure as owners, that is not the only element they must meet to rebut the presumption of abandonment: the Fredricksons must also

show reasons for nonuse. *See Elephant Butte Irr. Dist.*, 287 P.3d at 331. The Fredricksons cited drought conditions as a reason for nonuse. However, the Fredricksons do not own cattle or other livestock, and have never owned cattle or other livestock. They have not attempted to make use, of any kind, of the water right. Accordingly, I find that the Fredricksons failed to provide any valid reason for the seventeen years of nonuse under their ownership and the ownership of their predecessors in interest. Accordingly, I recommend that the Court deny the Fredricksons' motion for summary judgment.

### B.  The Plaintiffs' Motion

The Plaintiffs also moved for summary judgment in their favor, specifically seeking a declaration that well 10A-5-W06 is not entitled to any livestock use water right. The burden remains on the Fredricksons to justify a water right above that which was offered by the Plaintiffs.[3] (Doc. 2985 at 2-3.)

The undisputed facts of the well were discussed above. The Fredricksons continue to bear the burden of proving their alleged livestock use water right. The Fredricksons produced no admissible evidence establishing an existing livestock use water right. Accordingly, I recommend that the Court determine that the Fredricksons failed to establish a livestock use water right in well 10A-5-W06 and grant the Plaintiffs' motion for summary judgment.

Even if the Fredricksons established a livestock use water right in well 10A-5-W06, that right was abandoned long ago. Seventeen years of nonuse creates a presumption of abandonment. The Fredricksons now bear the burden of rebutting that presumption with

---

[3] While Plaintiffs previously offered to resolve this matter, they explicitly withdrew that offer with the filing of their cross-motion for summary judgment. (Doc. 3315 at 10-11 n.5.) Previous settlement negotiations are not admissible. FED. R. EVID. 408. Accordingly, I assume that the Plaintiffs have offered no livestock use water right.

evidence that there was no intent to abandon the water right and that there was a reason for the period of nonuse. *Elephant Butte Irr. Dist.*, 287 F.3d at 331. While the Fredricksons presented acceptable evidence to show that they have not intended to abandon the water right since 2006, they presented no evidence or valid reason for the period of nonuse. As such, the Fredricksons failed to rebut the presumption of abandonment. Should the Court find that a livestock use water right existed in well 10A-5-W06, I recommend that the Court further determine that such water right was abandoned and the Fredricksons failed to meet their burden of rebutting the presumption of abandonment. Accordingly, I recommend that the Court grant the Plaintiffs' motion for summary judgment and conclude that the Fredricksons do not hold a livestock use water right in well 10A-5-W06.

Further, I recommend that the Court adjudicate the following water right in well 10A-5-W06:

**WELL**

**Map Label:**        10A-5-W06

**OSE File No:**      G 02469

**Priority Date:**    12/31/1955

**Purpose of Use:**   NON 72-12-1 DOMESTIC

**Well Location:**    As shown on Hydrographic Survey Map 10A-5

**S.** 19  **T.** 05N        **R.** 18W        **1/4, 1/16, 1/64** NW     NE      NE

**X (ft):** 2,439,962      **Y (ft):** 1,329,981

New Mexico State Plane Coordinate System, West Zone, NAD 1983

**Amount of Water:**   Historical beneficial use not to exceed 0.7 ac-ft per annum

## CONCLUSION

For the foregoing reasons, I recommend that the Court grant the Plaintiffs' motion to strike the purported expert report of Craig Fredrickson, deny the Fredricksons' motion for sanctions, deny the Fredricksons' motion for summary judgment, and grant the Plaintiffs' cross-motion for summary judgment. Specifically, I recommend that the Court conclude that no livestock use water right exists in well 10A-5-W06, and that if any such livestock use water right ever did exist in that well, it has been abandoned.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_William P. Lynch_
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.

14