**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA, and
STATE OF NEW MEXICO, ex rel. STATE
ENGINEER,

      Plaintiffs,

and

ZUNI INDIAN TRIBE, NAVAJO NATION,

      Plaintiffs in Intervention,

v.                                                  No. 01-cv-0072-DUH/JHR
                                                             ZUNI RIVER BASIN ADJUDICATION
A & R PRODUCTIONS, et al.                     Subfile No. ZRB-1-0148

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b) the presiding District Judge has referred this case to the undersigned Magistrate Judge to perform "any legal analysis required to recommend an ultimate disposition of the case." [Doc. 3545]. The matter is presently before the Court on Plaintiffs' (the United States of America's and State of New Mexico's), Motion for Summary Judgement and Memorandum of Law in Support Thereof. [Doc. 3491]. After the Motion was briefed and the parties briefed the propriety of a Surreply, I recommended that Defendant Meech be permitted to file a Surreply and that her Motion to Certify certain issues raised in the Motion to the New Mexico Supreme Court be denied. [*See* Docs. 3517 (PFRD on Motion for Surreply), 3532 (PFRD on Motion to Certify)]. These recommendations were adopted, and Meech filed her Surreply, completing the briefing. [*See* Docs. 3494 (Plaintiffs' Notice of Errata), 3496 (Meech's Response), 3504 (Plaintiffs' Reply), 3522 (Order Adopting PFRD on Motion for

1

Surreply), 3528 (Meech's Surreply), 3531 (Amended Notice Certifying Completion of Briefing), 3535 (Order Adopting PFRD on Motion to Certify)]. Having reviewed the record in this case and weighed the facts presented by the parties against the relevant law, the Court recommends that Plaintiffs' Motion be **granted in part** and **denied in part**, for the following reasons.

## I. INTRODUCTION

This PFRD will attempt to recommended adjudication of all water features on Meech's property: two wells and three ponds. At issue is whether Meech has established a genuine issue of material fact concerning her prior use from one of the wells, whether she is entitled to an expanding water right projected into the next century for both wells under New Mexico's relation back precedent given her family's commercial mining activities, and whether she is entitled to account for evaporative loss from her ponds in calculating her water right despite the fact that one of the ponds is filled by a well. Having considered the evidence adduced by the parties, I find that Meech has produced sufficient evidence to create a genuine issue of material fact as to her past use of the now-dormant well (8B-1-W10), has created a genuine issue of material fact as to her expanding right for both wells under the relation doctrine, and has created a genuine issue of material fact as to the evaporative losses resulting from her livestock ponds. However, I find that she has failed to carry her burden of production at summary judgment as to the issue of evaporative loss in her industrial pond in light of the undisputed evidence proffered by Plaintiffs. Therefore, summary judgment should be granted as to the industrial pond but denied as to Meech's wells and livestock ponds because the disputed facts of this case preclude summary judgment under Federal Rule of Civil Procedure 56.

## II.     BACKGROUND

This case was brought by the United States of America and joined by the State of New Mexico to determine the water rights of users of the Zuni River basin, located in the State of New Mexico. [*See* Doc. 1 (Complaint), p. 15; Doc. 222 (Amended Complaint), p. 21]. Defendants, like Meech, are all people or entities claiming rights or interests in the use of the surface or groundwaters of the basin adverse to the rights of the United States, the State of New Mexico, the Zuni Indian Tribe and Ramah members of the Navajo Indian Nation. [Doc. 1, p. 17; Doc. 222, p. 13].

Notice that the consultation period for the present subfile ended was filed on January 28, 2020, requiring Meech[1] to either accept the Consent Order bearing Plaintiffs' most recent offer or file a subfile answer. [Doc. 3446, pp. 1-2]. Meech answered through counsel on March 2, 2020, asserting that Plaintiffs' offers did not accurately reflect past beneficial use of water nor planned future beneficial use pursuant to *State ex rel. Reynolds v. Mendenhall*, 1961-NMSC-083, 68 N.M. 467. [Doc. 3449 (Subfile Answer), p. 1]. The parties agreed that discovery was necessary, submitted a Joint Status Report and Proposed Discovery Plan, and participated in a Scheduling Conference with this Magistrate Judge. [Docs. 3451 (Clerk's Minutes, Status Conference), 3453 (JSR), 3454 (Clerk's Minutes, Scheduling Conference), 3455 (Scheduling Order).

Among other things, the Joint Status Report summarized Plaintiffs' contention that Meech is not entitled to water rights based on future needs under *Mendenhall*, while discussing Meech's interest as principal in C&E Concrete Inc. ("C&E"), "a business that has existed since the mid-1970s … [which] produces concrete asphalt, sand, gravel, and crushed rock, as well as engages in

---

[1] Norma Meech notified the Court that her husband, Walter Meech, died on March 18, 2017 and filed an Unopposed Motion for Substitution of Party on May 4, 2020, which this Court granted. [Docs. 3456, 3458, 3469].

limestone mining operations from a mineral deposit located southwest of Grants, New Mexico." [Doc. 3453, p. 5]. The mining operation takes place at a "large open pit mine known as the Tinaja Rock Quarry." [Doc. 3453, p. 5]. As stated in Meech's Motion to Certify, the mining operations at Tinaja require water for dust suppression to preserve air quality at mining locations, haul roads, transfer locations and other areas. [Doc. 3488, p. 3]. In anticipation of the mining and sand production activities at Tinaja, two wells were drilled on the property in October of 1988 and October 1990. [*Id.*, op. 4]. While one well has since become unusable, the other continues to be used for its declared purposes on a nearly continuous basis. [*Id.*, p. 4]. Meech intends to continue to place water to beneficial use from the currently active well and from the other after it is rehabilitated as she and her family continue on mining and processing limestone at Tinaja. [*Id.*, p. 5].

Plaintiffs' Motion for Summary Judgment seeks adjudication of "those water rights in the Zuni River Basin ('Basin') associated with the real property owned by" Meech. [Doc. 3491, p. 1]. "Simply put", say Plaintiffs, "the parties disagree about the effect of the *Mendenhall* doctrine on the determination of Meech's water rights[.]" [*Id.*, pp. 2-3]. Plaintiffs' introductory paragraph to their Motion for Summary Judgment states that no dispute of material fact exists concerning the priority, amount, purpose, place of use, and point of diversion associated with the water rights held by Meech. [Doc. 3491, pp. 1-2]. Plaintiffs ask the Court to declare Meech's water rights in accordance with their calculations.

Meech's Response agrees that judgment is appropriate as to the past beneficial use of Well 8B-1-W11, but otherwise argues that there are genuine issues of material fact regarding past beneficial use of Well 8B-1-W10, the future output of both wells, and the evaporative losses sustained by her ponds. [Doc. 3496, pp. 2-3]. Ms. Meech is not claiming an unlimited right to

future use but additional appropriation via "an ordered process" which permits the Court to "provide for the continued development of the water right into the future." [*Id.*, pp. 8-15]. In support of her claim related to Well 8B-1-W10, Meech proffers an affidavit authored by Walter L. Meech, Ms. Meech's son and President of C&E Concrete – the family business. [*See* Doc. 3496, pp. 3-8]. Meech does not cite evidence in support of her assertion that Plaintiffs have failed to account for her evaporative losses from the ponds in their calculations. [*See id.*, pp. 15-16].

Plaintiffs reply that *Mendenhall*'s reasonable-time requirement precludes Meech's claim to an expanding water right. [*See* Doc. 3504, pp. 2-10]. Plaintiffs argue that, under *Mendenhall* and its progeny, a reasonable amount of time to develop beneficial use must be less than twenty years. [*Id.*, pp. 3-7]. Plaintiffs submit that Meech's assertions about beneficial use from well 8B-1-W10 are implausible, relying on a Second Declaration of Thomas W. Ley as well as evidence from Ms. Meech's expert witness, Alan Kuhn. [*See* Doc. 3504, pp. 2, 11-15]. Regarding evaporative loss, Plaintiffs say their quantification of historic beneficial use from the two wells already includes water used to keep the industrial pond filled to storage capacity despite losses attributable to evaporation, obviating the need for additional water to compensate for evaporative losses from that pond. [*Id.*, pp. 16-17]. Plaintiffs further argue that Meech has failed to show a genuine dispute of fact as to the evaporative losses resulting from her livestock ponds. [*Id.*, pp. 15-16]. Plaintiffs do not argue that Meech is not *entitled* to an evaporative loss component, only that she has failed to *prove* the quantity she seeks, which is ultimately her burden as the claimant. [*Id.*, p. 16].

In her Surreply, Meech points out that Plaintiffs' expert's calculations as to well 8B-1-W10 are based on estimates, not actual meter readings, because historical water usage was incorrectly reported by Meech's agents to the Office of the State Engineer. [*See* Doc. 3528, pp. 2-3]. She

therefore concludes that there are disputes of fact concerning that well. [*Id.*, p. 4]. Meech also argues against a 20-year time limit on expanding her water right and states that she has acted diligently as a matter of law to develop her future rights through continuous mining operations. [*Id.*, pp. 5-11].

### III.  UNDISPUTED MATERIAL FACTS[2]

Meech owns real property associated with Subfile No. ZRB-1-0148 located in the NW¼ of Section 4, Township 9 North, Range 13 West, New Mexico Principal Meridian, within Sub-area 8 of the Zuni River Basin. [SOF 1]. Meech's property contains five water features—two wells (8B-1-W10 and 8B-1-W11) and three ponds (8B-1-SP34, 8B-1-SP66 and 8B-1-SP69(b)). [SOF 1, 3, 16]. Meech, the State, and the United States stipulate and agree to all elements of her water rights except the quantity of water to which she is entitled for each water feature. [SOF 2].[3]

Meech drilled Wells 8B-1-W10 and 8B-1-W11 in 1988 and 1990, respectively, prior to the New Mexico State Engineer's extension of the Gallup Underground Water Basin in 1994. [SOF 4]. From 2001 to 2020, Meech utilized a well meter to make a monthly record of the quantity of water pumped from Well 8B-1-W10, submitting those meter readings to the State Engineer. [SOF 6]. Well 8B-1-W10 is capable of pumping at a rate of 7 gallons per minute, [SOF 5], but has not produced water since 2012. [SOF 7]. However, Meech intends to repair it and return it to capacity. [Doc. 3496, p. 3].

The historic pumping capacity of Well 8B-1-W11 is up to sixty (60) gallons per minute, [SOF 9, 12]. Meech undertook extensive repairs on the well in 2016-2017 to improve its

---

[2] The following facts are undisputed by the parties for the purposes of this decision: facts 1, 2, 3, 4, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, while facts 5 and 8 are disputed by Meech. [*Compare* Docs. 3491 (Motion), pp. 3-6; 3496 (Response), pp. 3-5]. For clarity the Court refers only to the number Plaintiffs assigned to their statement of facts where there are no genuine disputes.

[3] This includes the purposes, priority dates, locations, and water sources for each of the water features. [SOF 2].

production capacity and reliability, [SOF 11], and it can now produce up to sixty-seven point nine three (67.93) gallons per minute. [SOF 13, Doc. 3496, p. 4]. From 2001 to 2020, Meech has utilized a meter monthly to record the quantity of water pumped from Well 8B-1-W11 and has submitted the meter readings to the State Engineer. [SOF 10].

The parties agree that from the time Wells 8B-1-W10 and 8B-1-W11 were drilled through 2020, all the water Meech has pumped from the wells has been put to beneficial use in the limestone mining and processing operation at the Tinaja Quarry. [SOF 14]. In order to fulfill her long-held plan to develop her mine, Meech contends that she is entitled to continue to develop her water rights from the wells. [SOF 15].

Pond 8B-1-SP69B is used for Meech's mining purposes, historically has been filled by water pumped from Wells 8B-1-W10 and 8B-1-W11, [SOF 18], and is capable of impounding and storing 0.540 acre-feet. [SOF 19]. Ponds 8B-1-SP34 and 8B-1-SP66 are used for livestock purposes, and historically have been filled by surface runoff. [SOF 17]. Pond 8B-1-SP34 is capable of impounding and storing 0.167 acre-feet of water; Pond 8B-1-SP66 is capable of impounding and storing 1.933 acre-feet. [SOF 19]. Meech does not dispute the amount of water that the United States determined during the Hydrographic Survey can be impounded and stored in each of the ponds but contends that quantification should account for evaporative losses from the ponds. [SOF 20, 21].

### IV.  **DISPUTED MATERIAL FACTS**

Plaintiffs assert that during the period from 2001 to 2020, the maximum annual pumping rate for Well 8B-1-W10 occurred in 2006 and amounted to 2.04 acre-feet. [SOF 8]. Meech contends that the most water produced from well 8B-1-W10 occurred in 2002 when the well produced 15.46 acre-feet used for mining, processing, manufactured sand, and dust control

7

purposes. [Doc. 3496, p. 4]. Plaintiffs rely on their expert, Thomas Ley, a Senior Supervisory Engineer at Natural Resources Consulting Engineers, Inc., who admits that his calculations are based on assumptions premised on the current meter on the well and that there were "significant" discrepancies found in the recorded meter readings. [*See* Doc. 3491-1]. Meech relies on her son Walter L. Meech, president of C&E concrete. [*See* Doc. 3496-1]. Walter Meech contends that the meter records contain mistakes in the placement of the decimal point as corroborated by the amount of water that was needed for actual operations conducted. [Doc. 3496-1, pp. 2-3; *see also* 3496, p. 7]. Meech contends that Plaintiffs' numbers for Well 8B-1-W10 grossly underestimate its capacity as well as the water needs of the mining operation. [*See id.*, p. 8]. Plaintiffs reply that Meech's evidence is implausible because her affidavit does not explain how and which records reported to the State Engineer were corrected. [Doc. 3504, p. 12]. Plaintiffs contend that Meech's expert's use of multipliers was arbitrary because he did not know how the meter on Well 8B-1-W10 should be read and because Well 8B-1-W10 would not have been capable of producing the quantity of water alleged by Meech and her expert. [*Id.*, pp. 13-14].

V. **LEGAL STANDARDS FOR SUMMARY JUDGMENT**

Summary judgment under the Federal Rules of Civil Procedure must be granted if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material to a dispute at summary judgment "if it can have an impact on the outcome of the lawsuit[.]" *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Services*, 994 F.3d 1166, 1171 (10th Cir. 2021). A dispute of fact is genuine if "a rational trier of fact" could find for either party in light of the evidence presented. *See Throupe v. Univ. of Denver*, 988 F.3d 1243, 1250 (10th Cir. 2021); *New Mexico Oncology & Hematology Consultants, Ltd.*, 994 F.3d at 1171. When making

8

this determination, a court must view the evidence "in the light most favorable to" the party opposing summary judgment. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoted authority omitted). Thus, at summary judgment a judge is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Tolan*, 572 U.S. at 656.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). "After the moving party has identified a lack of a genuine issue of material fact, the nonmoving party has the burden to cite to specific facts showing that there is a genuine issue for trial." *Ezell v. BNSF Ry. Co.*, 949 F.3d 1274, 1278 (10th Cir. 2020). The nonmovant must produce evidence which the trier of fact could reasonably employ to find for her. *New Mexico Oncology & Hematology Consultants, Ltd.*, 994 F.3d at 1171. If the nonmovant fails to provide evidence supporting a necessary element of her claim, the movant is entitled to summary judgment. *Throupe*, 988 F.3d at 1250 (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322–23 (1986)). The Court does not have to accept evidence that is "blatantly contradicted by the record" but the rejected fact must be "so utterly discredited by the record that no reasonable jury could have believed it, constituting visible fiction." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1164 (10th Cir. 2021) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).[4]

---

[4] As *Scott* states: "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. at 380.

9

## VI.  APPLICABLE SUBSTANTIVE LAW

New Mexico state law provides the substantive standards for this water rights adjudication. *See United States v. A & R Productions*, 2017 WL 4271444, at *2 (D.N.M. Mar. 29, 2017).

> The Constitution of the State of New Mexico provides that "[t]he unappropriated water ... within the state ... is hereby declared to belong to the public." N.M. CONST. Art. 16 § 2. "Beneficial use shall be the basis, the measure and the limit of the right to the use of water." *Id.* at § 3. That is, a water user may acquire the right to use water through beneficial use. N.M. Stat. Ann. § 72-1-2; *State ex rel. Erickson v. McLean*, 308 P.2d 983, 987 (N.M. 1957). "Beneficial use" means the "direct use or storage and use of water by man for a beneficial purpose including, but not limited to, agricultural, municipal, commercial, industrial, domestic, livestock, fish and wildlife, and recreational uses." N.M. Code R. 19.26.2.7(D) (2014), N.M. Code R. 19.26.2.7(D) (2014). Adjudicated water rights decrees must declare "the priority, amount, purpose, periods and place of use." § 72-4-19.

*A & R Productions*, 2017 WL 4271444, at *2. The burden is on Meech, as the water user, to quantify the amount of her water right. *Id.* (citing *Pecos Valley Artesian Conservancy Dist. v. Peters*, 193 P.2d 418, 421-22 (N.M. 1948)).

The most challenging legal issue in this case involves application of the doctrine of "relation", or "relation back", in New Mexico water law.  Relation attempts to provide a way to quantify the right of a claimant who can show actual beneficial use of a specific quantity of water at a certain date, but who wants to claim a greater future quantity because of an expected expansion of that same use over time. *See generally State ex rel. Reynolds v. Mendenhall*, 1961-NMSC-083, ¶ 1, 68 N.M. 467, 468, 362 P.2d 998, 999 (also termed the "*Mendenhall* doctrine."). In a very recent decision, the New Mexico Court of Appeals held that the doctrine of relation can, on proper facts, be applied to mining as a category of beneficial use of water, pointing to a long history of western case law to that effect. *See State ex rel. Office of State Eng'r v. Elephant Butte Irrigation Dist.*, 2021-NMCA-066, ¶¶ 37-47, 499 P.3d 690 (citing California, Nevada, Oregon, Colorado, Wyoming, and New Mexico cases). The New Mexico Court of Appeals described the elements of

10

a relation claim as: (1) beginning a project to appropriate water to beneficial use, and (2) consummation of the project without unnecessary delay by exercising reasonable diligence[5] under the totality of the circumstances. *Id.*, ¶¶ 42, 56. The "bedrock" requirement of diligently applying water to beneficial use within a reasonable time given the circumstances at hand is a factual inquiry, and, importantly, each case must "stand and be decided on its facts." *Id.*, ¶47.[6]

As for the issue of evaporative loss from impounded water, as Meech notes, there is no New Mexico case law definitively stating an entitlement to additional compensatory water rights. However, the fact that some stored water is lost to evaporation has been judicially recognized, *see Jicarilla Apache Tribe v. United States*, 657 F.2d 1126, 1145 (10th Cir. 1981) ("We conclude that neither the Bureau nor the City may store water in violation of congressional directives, especially in light of the fact that the storage would result in a great amount of waste due to evaporation."), and the New Mexico Court of Appeals in *Elephant Butte* appears to recognize in dicta that there may be circumstances where evaporative loss is correctly quantified in a water right. *See* 2021-NMCA-066, ¶¶ 118-120. As also shown in *Elephant Butte,* New Mexico water law is part of a shared legal culture[7] and several western jurisdictions recognize evaporative losses as incidental

---

[5] "[T]he core of relation—requiring a lawful commencement of an appropriation with notice to the world of intent, followed by diligence in bringing the planned appropriation to fruition by application of water to a beneficial use in a reasonable time—has remained the same. The question in each case is whether in a given circumstance the would-be appropriator has been diligent." *State ex rel. Office of State Eng'r v. Elephant Butte Irrigation Dist.*, 2021-NMCA-066, ¶ 52, 499 P.3d 690.

[6] Abandonment of a water right may be at issue but Plaintiffs do not argue that the factors outlined by previous courts to find abandonment are met. *See State ex rel. Office of State Eng'r v. Elephant Butte Irrigation Dist.*, 2021-NMCA-066, ¶ 111, 499 P.3d 690 ("[T]he factors the Colorado courts have considered as indicative of an intent not to abandon a water right include: (1) repair and maintenance of structures; (2) attempts to put the water to beneficial use; (3) active diversion records and non-appearance of the water right on the [s]tate [e]ngineer's abandonment list; (4) diligent efforts to sell the water right[s]; (5) filing documents to protect, change, or preserve the right; (6) leasing the water right; and (7) economic or legal obstacles to exercising the water right. None of the factors is deemed conclusive but they may be enough to rebut the presumption of abandonment.").

[7] *See Albuquerque Land & Irr. Co. v. Gutierrez*, 1900-NMSC-017, ¶ 67, 10 N.M. 177, 61 P. 357, 364, *aff'd sub nom. Gutierres v. Albuquerque Land & Irrigation Co*, 188 U.S. 545 (1903) (Examining Colorado law and concluding that "the law of prior appropriation governs in both jurisdictions."); *Sarret v. Hunter*, 32 Idaho 536, 185 P. 1072, 1074 (1919) ("Article 15, § 3, of the Constitution of this state, provides: 'The right to divert and appropriate the

to beneficial use.[8] The narrower question raised by this motion is whether Meech has produced a genuine dispute of material fact in favor of additional water to compensate for evaporative losses from her ponds or whether Plaintiffs' calculations already adequately account for such losses.

## VII. **ISSUES PRESENTED**

**A.** Should the Court grant summary judgment on the beneficial past use of Well 8B-1-W10 or has Meech created a genuine issue of material fact sufficient to avoid summary judgment in Plaintiffs' favor?

**B.** Should the Court grant summary judgment on the beneficial past use of Well 8B-1-W11 given the parties' agreement?

**C.** Should the Court grant summary judgment in Plaintiffs' favor foreclosing an expanded future water right from the wells, or has Meech raised genuine issues of material fact concerning her diligence in applying the water from her wells to a beneficial use through her

---

unappropriated waters of any natural stream to beneficial uses, shall never be denied.'"); *Santa Barbara Channelkeeper v. City of San Buenaventura*, 19 Cal. App. 5th 1176, 1183, 228 Cal. Rptr. 3d 584, 589 (2018) ("California's water belongs to the people of this state, but the right to use surface water may be acquired, either pursuant to the doctrine of riparian rights or by appropriation.").

[8] *See Zigan Sand & Gravel, Inc. v. Cache La Poudre Water Users Ass'n*, 758 P.2d 175, 183 (Colo. 1988) ("Since evaporation from the ponds was one such effect and since the proposed plan for augmentation made no provision for compensation for evaporative losses incident to reclamation use, the trial court properly denied approval of the plan."), *id.* at 185 ("Since evaporation is one characteristic of the mining operation that could injure senior users, the district court could not properly approve Zigan's plan for augmentation unless Zigan compensated for the losses to the river through the evaporation that would be caused by the mining and subsequent reclamation activities."); *see also Cent. Colorado Water Conservancy Dist. v. Simpson*, 877 P.2d 335, 345 (Colo. 1994) ("Owners and operators of sand and gravel pits excavated prior to 1981 are thus not insulated from judicial scrutiny of the effects of evaporative losses on senior water rights."); *R.T. Nahas Co. v. Hulet*, 106 Idaho 37, 41, 674 P.2d 1036, 1040 (Ct. App. 1983) ("Hulet also asserts that the court should not have added the amount of water necessary to compensate Nahas for water lost through evaporation from his lake, because evaporation is not a beneficial use. However, a reasonable loss of water through evaporation or seepage is allowed."); *City of Los Angeles v. City of San Fernando*, 14 Cal. 3d 199, 290, 537 P.2d 1250, 1316 (1975) ("Provision should be made in the new judgment for determining the amount of credit for any such spreading, taking into account any losses from evaporation or otherwise that may be caused by the spreading operations."); *City of Barstow v. Mojave Water Agency*, 23 Cal. 4th 1224, 1255, 5 P.3d 853, 873 (2000) ("This product was added to the estimated amount of water lost from lake evaporation and the amounts needed for home use and greenbelt irrigation."); *State Dept. of Ecology v. Grimes*, 121 Wash. 2d 459, 464, 852 P.2d 1044, 1047 (1993) ("The referee recommended that this claim be confirmed, but limited it to an instantaneous flow of 1.5 c.f.s. during irrigation season, and a storage right of 183 acre feet plus 737 acre feet for evaporative loss, for a total storage right of 920 acre feet.").

family's mining operations sufficient to trigger the relation doctrine and require adjudication of an expanding, though ultimately limited, water right based on the totality of the circumstances?

  **D.**  Should the Court grant summary judgment in Plaintiffs' favor as to Pond 8B-1-SP69B in light of their consideration of evaporation through quantification of beneficial use from the two wells which purportedly includes the water used to keep the pond filled to its storage capacity despite losses to evaporation, or has Meech raised a genuine issue of material fact concerning entitlement to an additional amount to compensate for evaporative losses?

  **E.**  Should the Court grant summary judgment in Plaintiffs' favor as to the two livestock ponds, which the parties agree are filled via surface runoff, despite Plaintiffs' failure to include evaporative losses in their calculations of Meech's water rights?

## VIII. <u>ANALYSIS</u>

### A. The Court should deny summary judgment as to Meech's past beneficial use of water from Well 8B-1-W10 because there is a genuine dispute of material fact – how much water she actually historically used.

Summary judgment must be granted when there are no disputed material facts and judgment should be entered as a matter of law. Fed. R. Civ. P. 56(a). Conversely, summary judgment must be denied if a genuine issue of material fact exists precluding straightforward application of the relevant law. Here, the parties dispute the beneficial past used of Well 8B-1-W10. This precludes summary judgment as to the Well.

As discussed, Plaintiffs assert that the maximum annual pumping rate for Well 8B-1-W10 amounted to 2.04 acre-feet. Plaintiffs rely on their expert's calculations based on reasonable, but admitted, assumptions. Meech, on the other hand, contends that the most water produced from well 8B-1-W10 was 15.46 acre-feet. She relies on the affidavit of Walter L. Meech, president of C&E concrete. Walter Meech contends that the meter records contain mistakes in the placement

of the decimal point as corroborated by the amount of water that was needed for actual operations conducted. Meech asserts that Plaintiffs' numbers for Well 8B-1-W10 grossly underestimate its capacity as well as the water needs of the mining operation. Meech also relies on her expert's calculations.

Plaintiffs reply that Meech's evidence is implausible because her affidavit does not explain how and which records reported to the State Engineer were corrected. Plaintiffs contend that Meech's expert's use of multipliers was arbitrary because he did not know how the meter on Well 8B-1-W10 should be read and because Well 8B-1-W10 would not have been capable of producing the quantity of water alleged by Meech and her expert.

The Court finds that these conflicting contentions present a textbook example of a genuine dispute of material fact. The parties dispute the past beneficial use provided by Well 8B-1-W10. The dispute is material to the result of this proceeding. Meech's past beneficial use is required to assess Meech's water right as a matter of historical fact and under the relation doctrine, as further explained below. The dispute is genuine because a reasonable fact finder could, upon weighing the evidence, find for either Plaintiffs or Meech. It is not the Court's role to weigh the evidence at summary judgment, only to determine whether there is a genuine issue for trial. While Plaintiffs argue that Meech's position is implausible, they have not moved to exclude Meech's expert witness under *Daubert*, and they have not otherwise argued that Meech will be unable to carry her burden at trial. Therefore, because there are genuine disputes of fact concerning Meech's past beneficial use resulting from Well 8B-1-W10, summary judgment should be denied as to it.

**B. The Court *could* grant summary judgment on Meech's past use of Well 8B-1-W11 given the parties' agreement.**

Summary judgment must be granted when there are no disputed material facts and judgment should be entered as a matter of law. Meech does not dispute Plaintiff's calculations of

the beneficial past use of Well 8B-1-W11. Thus, there are technically no factual or legal disputes to resolve concerning Well 8B-1-W11. Summary judgment could therefore be granted as to the beneficial past use of Well 8B-1-W11.

**C. However, the Court should deny summary judgment as to Meech's water rights for both wells because she has raised genuine issues of material fact concerning the application of the relation doctrine to her mining operations requiring further factual development of the totality of the circumstances of this case.**

As discussed, the doctrine of relation as applied through New Mexico cases attempts to provide a way to quantify the right of a claimant who can show actual beneficial use of a specific quantity of water at a certain date, but who wants to claim a greater future quantity because of an expected expansion of that same use over time. *See generally State ex rel. Reynolds v. Mendenhall*, 1961-NMSC-083, ¶ 1, 68 N.M. 467, 468, 362 P.2d 998, 999 (also termed the "*Mendenhall* doctrine."). Furthermore, the doctrine of relation can, on proper facts, be applied to mining as a category of beneficial use of water. *See State ex rel. Office of State Eng'r v. Elephant Butte Irrigation Dist.*, 2021-NMCA-066, ¶¶ 37-47, 499 P.3d 690. The elements of a relation claim are: (1) beginning a project to appropriate water to beneficial use, and (2) consummation of the project without unnecessary delay by exercising reasonable diligence under the totality of the circumstances. *Id.*, ¶¶ 42, 56. Importantly, whether water has been put to beneficial use within a reasonable time given the circumstances at hand is a factual inquiry, and each case must "stand and be decided on its facts." *Id.*, ¶47.

Here, the parties do not quantify Meech's expanding water rights; in fact, Plaintiffs argue that Meech's expanding needs based on her mining operations are "simply not relevant" to the quantification of water rights for the two wells, and that their calculations account for the effects of the relation doctrine. [Doc. 3491, p. 13]. Meech argues that she is entitled to an expanding right where she can show she has acted diligently. Plaintiffs agree that Meech has acted diligently as a

matter of law, but they disagree that she is entitled to more water. Plaintiffs further argue that Meech is entitled to expand her rights for at most 20 years. Thus, the issue is really whether the Court can say Meech was reasonable as a matter of law as applied to the relation doctrine.

However, this is not possible, nor proper. The New Mexico Court of Appeals, construing *Mendenhall*, made clear that a user's expanding right under the relation doctrine is bound to the facts of each case and cannot be determined categorically as a matter of law. The parties dispute whether Meech is entitled to additional water, as well as how much additional water she should be granted. This inquiry can only be answered by expert analysis of Meech's expanding water right in light of her mining activities, and the Court's consideration of evidence related to how long Meech should be permitted to continuing expanding her water rights in the two wells. As such, Meech has shown that there is a genuine dispute of material fact concerning her future water rights under the relation doctrine, precluding entry of summary judgment in this case. In fact, further discovery may be necessary to explore what is "reasonable" under the "totality of the circumstances" of this case. Therefore, summary judgment should be denied as to Meech's future water use under the doctrine of relation as discussed in *Mendenhall* and further construed by the New Mexico Court of Appeals when deciding *Elephant Butte* because there are genuine issues of material fact concerning Meech's future water needs and how much time she should be permitted to continue developing her rights.

   **D. The Court should grant summary judgment in Plaintiffs' favor as to Pond 8B-1-SP69B in light of their consideration of evaporation through quantification of beneficial use from Meech's wells and her failure to produce contrary evidence.**

The Court finds that summary judgment should be entered as to Pond 8B-1-SP69B. While there is no New Mexico case law definitively stating an entitlement to compensation of evaporative loss, courts recognize that stored water typically evaporates, and the New Mexico

16

Court of Appeals hinted that it might be recoverable in the right circumstances. *See* 2021-NMCA-066, ¶¶ 118-120. The narrower question raised by this motion is whether Meech has produced a genuine dispute of material fact in favor of additional water to compensate for evaporative losses from her ponds or whether Plaintiffs' calculations already adequately account for such losses.

The Court finds that they do. Plaintiffs provided evidence of their estimate for the water typically impounded in Pond 8B-1-SP69B and argue that, since it is filled from her wells and kept to capacity, Meech has not shown an entitlement to compensation for evaporative losses above the water Plaintiffs have already allocated to her through their calculations for the pond. Meech does cite any contrary evidence as to Pond 8B-1-SP69B, in fact conflating it with her two livestock ponds and arguing that the volume of water in the ponds represents the amount consumed by livestock and does not account for evaporation. [Doc. 3496, p. 16].Therefore, Plaintiffs, as movants, carried their burden to show no disputed fact as to the amount of water impounded in Pond 8B-1-SP69B.

More importantly, the parties agree that this pond is used for Meech's mining purposes and that it is filled from her wells. The Court agrees with Plaintiffs that, in theory, Plaintiffs' calculations for the wells should account for evaporative losses from Pond 8B-1-SP69B because they are used to keep it filled to capacity. Meech, as the nonmovant, was required to present contrary *evidence*, not mere speculation, that she is entitled to even more water to account for further evaporative losses than have already been accounted for by Plaintiffs' calculations. Having failed to do so, Meech has forfeited her opportunity to contest Plaintiffs' evidence as to Pond 8B-1-SP69B, and Plaintiffs should be granted summary judgment as to it.

> **E. The Court should deny summary judgment in Plaintiffs' favor as to Ponds 8B-1-SP34 and 8B-1-SP66, which the parties agree are filled via surface runoff, because Plaintiffs admit that they have not accounted for evaporative losses from them and Meech has shown that evaporative losses are recoverable in the right circumstances.**

Again, while there is no New Mexico case law definitively stating an entitlement to compensation of evaporative loss, courts recognize that stored water typically evaporates, and the New Mexico Court of Appeals hinted that it might be recoverable in the right circumstances. *See* 2021-NMCA-066, ¶¶ 118-120. Here, the parties agree that Ponds 8B-1-SP34 and 8B-1-SP66 are historically filled by surface runoff rather than from Meech's wells. Does this runoff adequately compensate Meech for loss due to evaporation? The Court doubts it.

Evaporative losses have been recognized by various courts as compensable when determining water rights. Unlike Meech's industrial pond, which is filled to capacity by her wells, Meech's livestock ponds are filled only by surface runoff. Plaintiffs do not argue that their calculations for these ponds include evaporative losses. Therefore, the amount of water consumed by livestock and the storage capacity of the pond do not account for losses due to evaporation, and Meech has accordingly demonstrated that further factual development is needed as to Ponds 8B-1-SP34 and 8B-1-SP66, and that summary judgment as to those ponds would be improperly granted.

## V. CONCLUSION AND RECOMMENDATION

As discussed, it was Plaintiff's burden as the movant to establish that summary judgment is warranted. Doing so requires showing the absence of genuine disputes of material fact. While Plaintiffs have shown that there is no dispute as to Well 8B-1-W11's historical use, Meech has shown that there are genuine issues of fact concerning Well 8B-1-W10's historical beneficial use, her right to an expanding water right under the doctrine of relation, as well as evaporative losses from her livestock ponds (Ponds 8B-1-SP34 and 8B-1-SP66). However, Plaintiffs have carried

their burden as to the water rights associated with Meech's industrial pond (Pond 8B-1-SP69B), warranting judgment as to it.

Wherefore, the Court recommends adjudication of the following water right on the subject property, but otherwise denying Plaintiffs' Motion for Summary Judgment:

**POND**

**Map Label:** 8B-1-SP69B

**Purpose of Use:** INDUSTRIAL

**Priority Date:** 7/7/2005

**Source of Water:** Wells

**Point of Diversion:**   Fills from wells:
8B-1-W10 (Location X(ft): 2,607,519; Y(ft): 1,471,622)
8B-1-W11 (Location X(ft): 2,607,491; Y(ft): 1,471,524)

**Amount of Water:**

**Depth (ft):** 6.0

**Surface Area (sq.ft):** 6,539

**Storage Impoundment Volume (acre-feet):** 0.540

**Pond Location:** As shown on Hydrographic Survey Map 8B-1

**S.** 4 **T.** 09N **R.** 13W **1/4, 1/16, 1/64** NW NE NE

**X (ft):** 2,608,788 **Y (ft):** 1,472,432

New Mexico State Plane Coordinate System, West Zone, NAD 1983

**SO RECOMMENDED.**

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**